**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald VONTSTEEN, a/k/a Skip
Vontsteen, Defendant–Appellant.**

No. 89-2745.

United States Court of Appeals,
Fifth Circuit.

Aug. 17, 1990.

H. Michael Sokolow, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN, JONES, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Appellant Gerald Vontsteen was convicted by a jury on twenty-one counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 and on one count of transporting stolen property in interstate commerce in violation of 18 U.S.C. § 2314.

Vontsteen appealed, arguing, among other issues, that the mailings were not in furtherance of the fraud as required by law. This court agreed and reversed the twenty-one mail fraud counts. *United States v. Vontsteen*, 872 F.2d 626 (5th Cir. 1989) (*Vontsteen I*). Noting the complexity of the sentencing package, the court remanded for resentencing on the remain-

ing count. On resentencing, before the judge who had imposed the original sentence, Vontsteen received the same sentence of incarceration, with credit for time already served.

Vontsteen argues that the district court: (1) violated his due process rights by increasing his sentence on the remaining count following successful appeal on other counts; (2) resentenced on the basis of erroneous information and assumptions; and (3) employed an erroneous calculation by Vontsteen's probation officer relating to his category offense level. We AFFIRM.

## I.

Vontsteen was charged in counts 1 through 21, the mail fraud counts, with aiding and abetting in a scheme to defraud seven suppliers, by obtaining approximately $1.2 million in "tubular goods" (pipe), and in count 22 with causing stolen pipe worth $33,828.40 to be transported from Texas to Louisiana.

In *Vontsteen I*, the district court sentenced Vontsteen as follows: (1) five years in prison on each of counts 1 through 10, to run concurrently; (2) five years each on counts 11 through 20, to run concurrently with each other, but consecutive to the sentence imposed for counts 1 through 10, *for a total incarceration of ten years;* (3) five years suspended on count 21 for five years probation, with supervision, to commence on completion of parole; (4) and ten years on count 22, to run concurrently with the sentence on count 21, suspended for five years probation, with supervision also to begin on completion of parole.[1]

After reversing the mail fraud convictions (counts 1–21), this court vacated the sentence and remanded for resentencing on count 22. In doing so, the court observed:

> Defendant was convicted on 22 counts and received a complicated sentence allocated among these counts. Now that we have reversed the convictions on all but one count, we think it appropriate that he be resentenced on this count (count 22),

as the original sentencing decision obviously was based on an overview of the case that has changed dramatically. *In remanding, we express no view as to whether defendant should receive, on count 22, the same or a lesser or greater sentence than he received originally. As always, that decision rests within the discretion of the district court.*

*Vontsteen I*, 872 F.2d at 632 (emphasis added).

On remand, Vontsteen moved for a revised presentence report. He requested that the parole guidelines be recalculated, because count 22 only involved $33,828.40 worth of pipe and the previous calculation was based on 22 counts involving over $1 million. Vontsteen also asserted that the original presentence report contained certain unsubstantiated assumptions that had been challenged at the first sentencing hearing, but had not been ruled on by the court in *Vontsteen I.* He contended that these unsubstantiated assumptions involved the reversed mail fraud convictions and, therefore, could not be considered.

The district court ordered a revised presentence report reflecting "that the only offense of conviction is interstate transportation of stolen property (count 22)." The probation officer subsequently prepared a revised report.

At the resentencing hearing, Vontsteen objected to the revised report on several grounds, including: the report used a value of $489,000 for the pipe, rather than $33,828.40, and included unsubstantiated assumptions and hearsay. Following a detailed and thorough hearing, the district court overruled these objections, but stated that it would consider them in setting the sentence. The district court then sentenced Vontsteen to ten years, without stating the reasons for the length of sentence.

## II.

Our discussion of Vontsteen's claims concerning the presentence report reflects the

1. Because the charged offenses occurred prior to November 1, 1987, Vontsteen was not sentenced under the Sentencing Guidelines.

detailed nature of the resentencing hearing, which has immediate application to his due process/vindictiveness claim. Accordingly, we will address that claim last.

### A.

■■■ Vontsteen argues that the district court resentenced him on the basis of erroneous information and assumptions contained in the presentence report. Due process requires that information relied on in determining an appropriate sentence have "some minimal indicium of reliability" and "bear some rational relationship to the decision to impose a particular sentence." *United States v. Fulbright*, 804 F.2d 847, 853 (5th Cir.1986). The defendant bears the burden of demonstrating that information the district court relied on in sentencing is "materially untrue." *United States v. Flores*, 875 F.2d 1110, 1113 (5th Cir. 1989). Vontsteen has not satisfied this burden.

■■ Vontsteen objects to two particular references in the presentence report. First, he argues that a reference to his making fraudulent representations about the credit standing and banking references of AMRO (a company through which Vontsteen operated) is incorrect. Vontsteen states that the trial testimony of the government's own witnesses showed that the trade and banking references were verified. The record, however, sufficiently supports that Vontsteen enticed pipe sellers to extend him credit based on misrepresentations of his financial condition. For example, several suppliers testified that Vontsteen tendered to them financial statements which the government later proved were false.

■■ Second, Vontsteen objects to the inclusion of unsupported allegations made by a former employer, including both unauthorized use of the employer's credit and embezzlement. He relies on the probation

officer's admission that "[t]here is no proof one way or the other." The government argues that the information could be considered because it was obtained by the probation department and was based on complaints lodged against Vontsteen and Vontsteen's own admissions. The government also notes that trained probation officers employ various investigative procedures for verifying information used in their reports and their reports are generally presumed reliable. *See, e.g., Gardner v. Florida*, 430 U.S. 349, 359–60, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977); *Flores*, 875 F.2d at 1112–13; *United States v. Long*, 656 F.2d 1162, 1164 (5th Cir.1981).

In *United States v. Garcia*, 693 F.2d 412, 416 (5th Cir.1982), this court noted the district court's "wide discretion in the kind and source of information [it] considers in imposing sentence." The district court was entitled to accord some "minimal indicium of reliability" to the information contained in the report. *Fulbright*, 804 F.2d at 853. *See also* 18 U.S.C. § 3661; *Roussell v. Jeane*, 842 F.2d 1512, 1523–24 (5th Cir.1988). Moreover, Vontsteen offered no facts or evidence to prove that the information was inaccurate or unreliable and therefore failed to meet his burden of proof. *Flores*, 875 F.2d at 1112–13.

### B.

■■ Vontsteen also argues that the district court erred in failing to correct the presentence report's computation of parole guidelines; that it should have reflected the diminished values of property after reversal of the mail fraud convictions.[2] The report's computation is not based on the reversed mail fraud charges, but on the value of all of the stolen pipe related to the offense under count 22 (interstate transportation of stolen property). The value of the three particular shipments specified in count 22 of the indictment was $33,828.40;

---

**2.** Vontsteen correctly notes that the amount in the revised report corresponds to the amounts used in dismissed counts 16–21. The difference in values changed Vontsteen's parole guidelines from 12 to 16 months to 36 to 48 months. 28 C.F.R. § 2.20, ¶ 331(b), (d). Vontsteen argues

that the calculation used runs afoul of 28 C.F.R. § 2.19(c), which provides that "the Commission shall not consider in any determination charges upon which a prisoner was found not guilty after trial. . . ."

but at trial, the government proved that Vontsteen was shipped, and never paid for, pipe worth $489,000. The revised presentence report, referring to United States Parole Commission Rules and Procedures Manual, Chapter 3, Subchapter D, § 331(g) n. (1), states:

> In determining the applicable offense category, the larger losses to Mustang Supply Company in excess of $489,000 were utilized. This was done because the total amount of the theft committed or attempted by the offender (or the value of losses relating to that theft) is to be used. This larger amount is ... appropriate ... because the count of conviction represents three of the forty loads of oilfield pipe which AMRO fraudulently obtained from Mustang Supply Company.

The district court did not err in not requiring revision of the report's calculation of the total theft. *See* 28 C.F.R. § 2.20, Chapter 13, Subchapter A(2)(a), which notes that "[i]n offenses rated by monetary loss ... the total amount of the property ... involved is used as the basis for the offense severity rating." *See also Sheary v. United States Parole Comm'n,* 822 F.2d 556, 558–59 (5th Cir.1987) (The court rejected the argument that an offense could only be categorized based on the amount included in the indictment and stated that the parole commission has broad discretion in setting a release time for a prisoner and "may take into account any substantial information available to it in establishing the prisoner's offense severity rating." *Id.* (quoting 28 C.F.R. § 2.19(c) (1985)).

Moreover, the court may consider virtually any reasonably reliable and relevant evidence, including dismissed counts of an indictment, uncharged allegations of criminal activity, and the facts underlying those counts or allegations, in pursuit of the "fullest information possible concerning the defendant's life and characteristics." *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949) (footnote omitted). *See also United States v. Juarez–Ortega,* 866 F.2d 747, 748–49 (5th Cir.1989); *United States v. Johnson,* 823 F.2d 840, 842 (5th Cir.1987).

## C.

■ The complaints concerning the presentence report and the district court's applicable rulings and use of it having been rejected, we turn to the due process/vindictiveness claim. Relying on *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), Vontsteen argues that because there was no "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original proceeding" (*id.* at 726, 89 S.Ct. at 2081) that justifies the "severe increase" in the sentence on count 22, the sentence violates due process of law.

*Pearce* concerned sentences after retrial greater than those imposed at the original trial, where the retrial resulted from the defendant having had the original sentence set aside through collateral attack. Holding that this was violative of due process, the Supreme Court held:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the in-

creased sentence may be fully reviewed on appeal.

395 U.S. at 725–26, 89 S.Ct. at 2080–81 (emphasis added) (footnote omitted). This *per se* rule, or presumption of vindictiveness, is a "prophylactic rule [which] prevents actual vindictiveness as well as the appeal-chilling appearance of vindictiveness." *United States v. Cataldo,* 832 F.2d 869, 874 (5th Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988).

Vontsteen's argument is premised on receipt of an increased ("more severe") sentence proscribed by *Pearce;* however, only the sentence on count 22 was arguably increased.[3]

As more fully discussed, we hold the *Pearce* presumption inapplicable here; Vontsteen did not receive a net increase in his sentence.[4] And, as an alternative to the *Pearce* presumption, Vontsteen has made no showing of actual or apparent vindictiveness by the trial judge.

### 1.

In so holding, we note other circuits have employed similar analysis. *E.g., Kelly v. Neubert,* 898 F.2d 15, 18 (3rd Cir.1990) ("Like the First and Seventh Circuits, we believe *Pearce's* per se prophylactic rule should not be mechanically applied when some of the defendant's individual sentences are increased, but his aggregate sentence is reduced on remand following a successful appeal."); *United States v. Gray,* 852 F.2d 136, 138 (4th Cir.1988) ("[R]esentencing will not be considered vindictive if the ultimate sentence for one or more counts does not exceed that given for all counts sentenced at the conclusion of the first trial." (citations and footnote omitted)); *United States v. Bay,* 820 F.2d 1511, 1513 (9th Cir.1987) ("Our precedent thus instructs us to evaluate [the] sentence in the aggregate and not merely with respect to each individual count."); *United States v. Busic,* 639 F.2d 940, 951 n. 12 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981) ("Because defendants' initial composite sentences would not be increased ... on resentencing, the due process protections against vindictiveness alluded to in [*Pearce*] ... are inapplicable here. Furthermore, because the appeal could not result in a higher sentence than that originally imposed, there could be no deterrent to an appeal.")

In addition to Vontsteen's overall sentence not being increased ("more severe"), this case does not fall squarely under Pearce for several other reasons. For example, Vontsteen was not sentenced after a new trial, one of the stated prerequisites for triggering the *Pearce* presumption. Factors that come into play concomitant with a new trial, such as the burden imposed on the trial judge, and which might give rise to vindictiveness, are not present here. A presumption of vindictiveness against a trial judge is a serious charge, certainly not one to be made without an extremely sound basis. For this, and other obvious reasons, we are more than mindful that we should not expand the *Pearce* prophylactic rule absent compelling reasons. The Supreme Court in the 21 years following *Pearce* has certainly not done so.

---

**3.** Indeed, it can be argued that Vontsteen's aggregate sentence was actually decreased. The sentence of incarceration on count 22 technically remained the same. The original sentence included incarceration for ten years for counts 1–21 and ten years for count 22, but suspended execution on count 22 for five years probation with supervision, to begin on completion of parole. On resentencing, Vontsteen was again sentenced to ten years in prison, but no subsequent probation.

**4.** We recognize *United States v. Henry,* 709 F.2d 298, 315 (5th Cir.1983) (*en banc*) (plurality) states in dicta that an increase on an individual count may implicate *Pearce.* However, assuming the sentence on count 22 was increased, the court has questioned this implication. In *United States v. Cataldo,* 832 F.2d 869, 875 (5th Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988), the court stated it was "not bound ... by this dicta of a minority of the en banc Court." *See also United States v. Colunga,* 786 F.2d 655, 658 n. 4 (5th Cir.1986); *appeal after remand,* 812 F.2d 196 (5th Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 165, 98 L.Ed.2d 120 (1987); *United States v. Crawford,* 769 F.2d 253, 258 (5th Cir.1985), *cert. denied sub nom., Waggoner v. United States,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986).

■ This much is clear: the *Pearce* prophylactic rule has not been broadened; arguably, it has been narrowed. Accordingly, we decline to expand it to instances where the overall sentence is not increased, but the sentence for one or more counts within that overall scheme is. As the Supreme Court stated recently in *Alabama v. Smith*, — U.S. ——, 109 S.Ct. 2201, 2204–05, 104 L.Ed.2d 865 (1989) (citations omitted):

> While the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness "do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial." *Texas v. McCullough....* As we explained in *Texas v. McCullough*, "the evil the [*Pearce*] Court sought to prevent" was not the imposition of "enlarged sentences after a new trial" but "vindictiveness of a sentencing judge." ... Because the *Pearce* presumption "may operate in the absence of any proof of an improper motive and thus ... block a legitimate response to criminal conduct," *United States v. Goodwin*, ... we have limited its application, like that of "other 'judicially created means of effectuating the rights secured by the [Constitution],'" to circumstances "where its 'objectives are thought most efficaciously served,'" *Texas v. McCullough....* Such circumstances are those in which there is a "reasonable likelihood," *United States v. Goodwin*, ... that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness, see *Wasman v. United States....*

As reflected above, the Supreme Court's justifiably restrained application of the *Pearce* prophylactic rule is reflected in numerous decisions. *E.g., Alabama v. Smith*, — U.S. at ——, 109 S.Ct. at 2202 ("[N]o presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial."); *Texas v. McCullough*, 475 U.S. 134, 140, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986) (The presumption does not apply when "different sentencers assessed varying sentences." The first sentence was imposed by a jury; the second, by a judge.); *Chaffin v. Stynchcombe*, 412 U.S. 17, 26–28, 93 S.Ct. 1977, 1982–83, 36 L.Ed.2d 714 (1973) (*Pearce* is inapplicable where the judge imposed the initial sentence and the jury imposed an increased sentence after retrial.); *Colten v. Kentucky*, 407 U.S. 104, 116–17, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584 (1972) (The presumption did not apply where a second court in a two-tier trial system imposed a longer sentence.).

### 2.

Nor, as noted, is there any evidence of actual, or even apparent, vindictiveness; the resentencing process reflects just the opposite, as partially discussed in parts II.A. and B. Vontsteen received a complicated sentence on multiple counts. Initially, he received ten years incarceration and five years probation. On resentencing, after preparation of a revised presentence report and a thorough hearing, he received ten years incarceration (with credit for the 22 months already served) and no probation.

Vontsteen's new sentence, viewed in context, shows no "retaliatory animus." *See United States v. Pimienta–Redondo*, 874 F.2d 9, 12–14 (1st Cir.) (*en banc*), *cert. denied*, — U.S. ——, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989) (citations omitted), where the court stated:

> It is important that the *Pearce* principle not be blown out of proportion. *Pearce* does not flatly prohibit resentencing, or even enhancement of sentence, after the accused has taken an appeal.... Rather, the presumption envisioned in *Pearce* arises "only in cases in which a reasonable likelihood of vindictiveness exists."

> \*    \*    \*    \*    \*    \*

> Where the sentencing judge's motivation cannot be called fairly into question, there is no need to indulge in the conjecture, and run the risks, which the *Pearce* presumption necessarily entails. Absent

proof of an improper motive—or some sound reason to suspect the existence of one—no reasonable apprehension of vindictiveness can flourish. Accordingly, on resentencing, if it is reasonably clear that the judge reshaped the impost merely as a means of bringing original sentencing intentions to fruition after some new development had intervened, a need for employing the *Pearce* presumption never arises. Stated in different terms, there must be some evidence of actual, or at least apparent, vindictive motivation before a due process violation can be claimed.

Moreover, this court noted the trial court's broad discretion in resentencing Vontsteen on remand. *Vontsteen I*, 872 F.2d at 632. It is permitted to consider a "breadth of information" in determining an appropriate sentence. *Pimienta–Redondo*, 874 F.2d at 14 (quoting *Wasman v. United States*, 468 U.S. 559, 564, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984) (plurality opinion)).

The court's authority to retrofit a sentence for multicount convictions after some are affirmed and others reversed "looms as an integral component of the trial judge's broad sentencing discretion." *Pimienta–Redondo*, 874 F.2d at 14 (footnote omitted). Vontsteen received a complicated sentence. The district court may consider the totality of his underlying criminal conduct and society's interest in ensuring that the punishment "suit[s] not merely the offense but the individual defendant." *See id.*, quoting

*Wasman*, 468 U.S. at 564, 104 S.Ct. at 3220; See also *United States v. Bentley*, 850 F.2d 327, 328–29 (7th Cir.), *cert. denied*, 488 U.S. 970, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988).

### 3.

Given these considerations, we see no need to remand merely to require the district judge to state on the record now why he imposed the sentence. We recognize, however, the potential for a vindictiveness claim, meritorious or not, in any resentencing. Therefore, we recommend strongly that a court state its reasons when imposing a new sentence, including for its length.[5] Likewise, if defendants consider a *Pearce* issue implicated, they are cautioned to first raise it in the trial court, as discussed in note 5.

### III.

The judgment of the district court is AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, dissenting.

The majority opinion tells Vontsteen that by obtaining the reversal of 21 of the 22 counts on which he was convicted and for which he was sentenced he has achieved nothing but a Pyrrhic victory. Under the original sentence, if he had complied with the conditions of probation, he would have served no time in prison; instead, he has

---

**5.** The dissent questions why we make this recommendation, when, under the facts of this case, we do not require such a statement. We do so for the reason stated above, in the hope of resolving issues in the district court, and thereby, removing an issue from appeal. To so recommend, in the hope of fostering judicial efficiency and economy and otherwise improving the administration of justice is one thing; but to require that which is not necessary, and thereby create yet another possible error for appeal, is another. We embrace the former and reject the latter.

There is another means of resolving this issue in the district court. We note in this case, as in *United States v. Forester*, 874 F.2d 983 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989), that the absence of such explanation by the trial judge can be attributed

to Vontsteen's failure to raise the *Pearce* issue in the district court. In *Forester*, the court held that "if *Pearce* vindictiveness is claimed, it should be adequately brought to the sentencing judge's attention so that the judge is given a fair opportunity to state on the record the pertinent reasons for the resentence." *Id.* at 984. In *Forester*, because, as here, the defendant did not raise the *Pearce* argument in the district court, this court looked to the plain error standard of review, found no miscarriage of justice, and therefore did not address the *Pearce* issue. The government did not raise the question of Vontsteen's duty to first present the *Pearce* challenge in the district court until oral argument. Accordingly, we have addressed the *Pearce* issue; but defendants are admonished to timely bring a *Pearce* vindictiveness challenge to the sentencing judge's attention.

been sentenced to ten years incarceration on the one remaining count. Absent explanation, this increase is sufficient to create a reasonable apprehension by the defendant of vindictiveness against him for his otherwise successful appeal. I cannot shrug off the difference between no time and ten years in federal durance, nor can I discern, under these circumstances, any reason for the majority's hortatory "strong" recommendation that in the future a court state its reasons for such conduct unless that dicta eases the majority's concern for approving what it recognizes as the "potential for a vindictiveness claim in any resentencing." If the district court is not required to provide any explanation, why recommend that district courts do the unnecessary? I therefore respectfully dissent from section II(C) of the majority's decision, regarding the application of the presumption of vindictiveness from *North Carolina v. Pearce*,[1] and, therefore, dissent from the judgment.

*Pearce* recognized that "[d]ue process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."[2] "[D]ue process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."[3] In addition, due process protects a defendant from vindictiveness for having successfully attacked his sentence even when the conviction itself is affirmed. The issue is simply whether the trial judge's increase in the sentence on

count 22 from ten years suspended, with five years probation, to ten years incarceration, is sufficient to invoke the *Pearce* presumption of vindictiveness and require the trial judge at least to explain his action. Absent explanation, so drastic an increase makes the reversal of the original sentence a paper triumph for the appellant.

The majority suggests three bases for its refusal to apply the *Pearce* presumption. I respectfully disagree with each.

### A.

First, it is plainly not the law of this circuit that sentencing *"after a new trial* [is] one of the stated prerequisites for triggering the *Pearce* presumption."[4] As we have previously observed, "[t]he Court captured the notion of vindictiveness in the discrete occurrence of a reversal on appeal prompting the lower court to punish the defendant."[5] Put another way, "when a trial court imposes a harsher sentence after a successful appeal, due process as interpreted in *Pearce* requires the court to set forth reasons justifying the increased sentence to overcome a presumption of vindictiveness."[6] Accordingly, this circuit has considered the *Pearce* presumption involved in offense recategorization by a panel of the United States Parole Commission[7] and in remands solely for resentencing.[8] The Supreme Court has repeatedly emphasized that the evil targeted by *Pearce* is the vindictiveness of the sentencing judge, *not* the mere fact that an enlarged sentence was imposed after a new trial.[9] Indeed,

1. 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

2. *Id.* at 725, 89 S.Ct. at 2080.

3. *Id.* at 726, 89 S.Ct. at 2080.

4. Slip op. at 5861, at 193 (emphasis added).

5. *Kindred v. Spears,* 894 F.2d 1477, 1479–80 (5th Cir.1990).

6. *United States v. Cataldo,* 832 F.2d 869, 874 (5th Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988).

7. *Kindred,* 894 F.2d at 1479–80.

8. *United States v. Forester,* 874 F.2d 983, 984 (5th Cir.) (per curiam), *cert. denied,* — U.S. —, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989); *United States v. Colunga,* 812 F.2d 196, 199–200 (5th Cir.) (*Colunga II*), *cert. denied,* 484 U.S. 857, 108 S.Ct. 165, 98 L.Ed.2d 120 (1987); *United States v. Colunga,* 786 F.2d 655, 659 (5th Cir.1986) (*Colunga I*).

9. *See Alabama v. Smith,* — U.S. —, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989) (citing *Texas v. McCullough,* 475 U.S. 134, 138, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986); *Chaffin v. Stynchcombe,* 412 U.S. 17, 25, 93 S.Ct. 1977, 1982, 36 L.Ed.2d 714 (1973)).

*Texas v. McCullough* recently noted that the burden of a new trial is not a persuasive basis for a *Pearce* presumption.[10]

### B.

The majority then attempts to distinguish *Pearce* on another ground: Vontsteen did not receive a "net increase" in his sentence, and "arguably" received a net decrease since his total original sentence amounted to ten years in prison and five years probation, compared to the ten years in prison imposed upon resentencing.[11] The majority would thus adopt for the first time the "aggregate package" rule prevailing in several other circuits.[12] As the majority observes, the plurality opinion for this court en banc in *United States v. Henry* stated in dicta that the modification of a concurrent sentence to run consecutively after successful appeal of other charges evoked *Pearce* even though there was an aggregate decrease in the appellant's sentence.[13] The six dissenting judges also fully agreed with this dicta, observing that "[o]f *course* there has been an increase, in the only sense of the word 'sentence' that can matter much to Henry: because of the trial court's action he had ten years to serve rather than only seven."[14] Although the *Henry* dicta has been questioned in subsequent opinions concerning double

jeopardy[15] and in a portion of a due process discussion that was itself unnecessary to decision,[16] its rationale has also been endorsed by the reasoning of later panels.[17] The only authority to the contrary consists of *United States v. Forester*, which at most examines the *Pearce* presumption through the weak lens of plain-error review.[18]

The majority thus breaks new ground in comparing only the total original sentence with the sentence finally imposed, and, in so doing, contravenes *Pearce*. *Pearce* focused on the misuse of the sentencing judge's discretion, not on matters beyond his control; here, no retrial, resentencing, judicial discretion, or vindictiveness was legally possible with regard to the overturned counts, which the majority would nevertheless crowd onto its scales.

The warrant for applying the *Pearce* presumption in cases like this is more than merely algebraic. Under these circumstances, the trial judge surely has a "personal stake in" the judgment originally entered and a "motivation to engage in self-vindication."[19] The convicted defendant may have a reasonable apprehension that the trial judge desires to deter appeal[20] and that his ultimate sentence is vindictive.[21] When an unexplained increase in sentence on a remaining, valid count fol-

---

**10.** *Texas v. McCullough*, 475 U.S. 134, 139, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986).

**11.** Slip op. at 5860 & n. 3, at 192 & n. 3.

**12.** Similar rules have been adopted by the First Circuit, see *United States v. Pimienta–Redondo*, 874 F.2d 9, 14–16 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); the Third, see *Kelly v. Neubert*, 898 F.2d 15, 16–18 (3d Cir.1990); *United States v. Busic*, 639 F.2d 940, 951 n. 12 (3d Cir.), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); the Fourth, see *United States v. Gray*, 852 F.2d 136, 138 (4th Cir.1988); and the Ninth, see *United States v. Bay*, 820 F.2d 1511, 1512–14 (9th Cir. 1987); *United States v. Hagler*, 709 F.2d 578, 579 (9th Cir.), *cert. denied*, 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983).

**13.** 709 F.2d 298, 315 (5th Cir.1983).

**14.** 709 F.2d at 323 (Gee, J., dissenting) (emphasis in original).

**15.** *Colunga I*, 786 F.2d at 658 n. 4; *United States v. Crawford*, 769 F.2d 253, 258 (5th Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986).

**16.** *Cataldo*, 832 F.2d at 874–75.

**17.** See *Paul v. United States*, 734 F.2d 1064, 1067 n. 3 (5th Cir.1984) (dicta); *cf. Kindred*, 894 F.2d at 1479.

**18.** 874 F.2d at 984.

**19.** *Chaffin*, 412 U.S. at 27, 93 S.Ct. at 1983.

**20.** *Paul*, 734 F.2d at 1067 n. 3 (emphasis in original); see *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1978).

**21.** See *Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080; see also *Blackledge v. Perry*, 417 U.S. 21, 27–28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); *Longval v. Meachum*, 693 F.2d 236, 237 (1st Cir.1982).

lows a successful appeal of other counts, resulting in a sentence very nearly equivalent to the sentence originally provided, there is a "reasonable likelihood"[22] that open and equal access to the appellate review of criminal convictions has been unconstitutionally impeded.[23]

Our opinion reversing the original conviction expressly provided that the judge upon resentencing was not limited to the probationary sentence originally imposed on count 22.[24] The judge may have had a valid explanation for increasing that sentence or, indeed, for requiring virtually the same sentence for a single law violation as that imposed for 22 transgressions. *Pearce* does not automatically invalidate an increased sentence whether the case involves retrial of a single count or resentencing after the reversal of only some of multiple counts. It merely requires explanation. By the majority's rationale, the same judge who must give reasons for his judgment in a minor civil proceeding so that they may be understood by the parties and evaluated on appeal may convert no prison time to ten years in a criminal case by sheer ipse dixit.

Requiring the sentencing judge to explain the sentence imposed under these circumstances implies no doubt of the integrity or wisdom of the trial judge. It is simply a means to allay reasonable suspicion that undertaking even a successful appeal was a feckless effort, and to enable a reviewing court to perform its duty on the basis of information rather than speculation. That the judge must have desired to effectuate the same sentence notwithstanding the reversal of 21 of 22 counts and the loss of 105 years of available sentence explains nothing save the obvious. The trial judge patently desired to do just

that. The question is why. If anything, better reason for an increase might be presumed in the *Pearce* situation after a retrial at which evidence of different conduct or events might crop up.[25]

The rule created by the majority necessitates proof of "actual or apparent vindictiveness by the trial judge," a formidable task. How would a defendant prove such vindictiveness by a judge who said nothing but merely announced a sentence? Under the majority's rationale, a de minimis sentence could be increased indefinitely to its statutory maximum if 21 consecutive capital sentences had been vacated as the result of illegal convictions, even if the surviving charge was originally of an entirely different order. The prospect that a reversal of convictions on 21 counts will result in the same sentence as that originally imposed presents the type of "appeal chilling" that the prophylactic rule of *Pearce* was designed to prevent.[26]

### C.

Finally, the majority appears to suggest that its decision is supported by a trend in the Supreme Court to lessen the scope of the *Pearce* presumption. Assuming our work to be directed by dipping our judicial fingers in the water for such currents, I find no such flow in the post-*Pearce* opinions. The later cases do emphasize a premise explicit in *Pearce:* for a presumption of vindictiveness to arise, the sentencer must at least be the same,[27] but that distinction does not apply here. The only other development has been the rejection in *Alabama v. Smith* of the rule implicit in *Simpson v. Rice*, the companion case to *Pearce;* in *Smith* the initial sentence was based on a guilty plea and the second sentence followed a trial at which new information

---

22. *Smith,* —— U.S. at ——, 109 S.Ct. at 2205 (quoting *United States v. Goodwin,* 457 U.S. 368, 373, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982)).

23. *Cf. Blackledge,* 417 at 25 n. 4, 94 S.Ct. at 2101 n. 4.

24. *See United States v. Vontsteen,* 872 F.2d 626, 632 (5th Cir.1989).

25. *See McCullough,* 475 U.S. at 141, 106 S.Ct. at 980; *Wasman v. United States,* 468 U.S. 559,

571–72, 104 S.Ct. 3217, 3224–25, 82 L.Ed.2d 424 (1984).

26. *United States v. Cataldo,* 832 F.2d 869, 874 (5th Cir.1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1577, 99 L.Ed.2d 892 (1988).

27. *See Smith,* —— U.S. at ——, 109 S.Ct. at 2206; *McCullough,* 475 U.S. at 140, 106 S.Ct. at 979–80; *Chaffin,* 412 U.S. at 26–28, 93 S.Ct. at 1982–83; *Colten v. Kentucky,* 407 U.S. 104, 116–17, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584 (1972).

became available.[28] For Vontsteen, trial preceded and provided the same information for both sentences, but the judge inexplicably increased the earlier sentence. Indeed, the majority would disable the *Pearce* presumption in all situations *inverting* the *Smith* problem, requiring retrial as a condition for providing the presumption of vindictiveness.[29]

### D.

The majority may be unduly reluctant to apply the *Pearce* presumption because they exaggerate the effect of doing so in this situation. The presumption is not a *per se* rule insensitive to meaningful distinctions, and responds to differing circumstances brought to the court's attention upon resentencing as well as to the means by which the reasons for imposing the suspect sentence "affirmatively appear."[30] Because Vontsteen's increased sentence on count 22 is the only sentence meaningful to him and because his circumstances present the classic indicia warranting a *Pearce* presumption, I would vacate the sentence imposed on count 22, remand for resentencing in accordance with our original mandate, and, if the new sentence increases his punishment on that count, for an explanation why it is appropriate and not retaliatory.

---

**28.** —— U.S. at ——, 109 S.Ct. at 2205–06.

**29.** *See supra* section A.

**30.** *Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081.