**UNITED STATES of America**

v.

**Paul F. CASEY, Defendant.**

**No. 85 Cr. 0428 (PNL).**

United States District Court, S.D. New York.

Dec. 3, 1991.

**726**

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This is a petition under 28 U.S.C. § 2255 by Paul F. Casey, who was the defendant in the criminal prosecution in the *United States v. Casey*, SSS 85 Cr. 0428 (PNL). At the same time it is a motion under Rule 35, Fed.R.Crim.P. Casey seeks to reduce the sentence imposed on him in the criminal prosecution.

The sentence of 9 years imprisonment under Counts One and Five was imposed on the understanding (shared by the court and all parties at the time) that the maximum lawful term of imprisonment was 15 years because sentence was imposed pursuant to the provisions of Title 21, Section 841(b)(1)(B) for "a controlled substance in Schedule I or II." Casey's sentences on Counts One and Five were predicated on the assumption that methamphetamine was a Schedule II controlled substance, as methamphetamine had been transferred from Schedule III to Schedule II on July 7, 1971. *See* 36 Fed.Reg. 12,734 (1971) and 21 C.F.R. § 308.12(d) (1972). Casey now submits that the purported transfer of methamphetamine from Schedule III to Schedule II did not comply with the requirements of law and was therefore invalid. He contends that methamphetamine consequently remained a Schedule III controlled substance and that his maximum exposure was therefore 5 years imprisonment.

The provision of law that is pertinent to Casey's contention is Section 201(b) of the Controlled Substances Act ("CSA"), 21 U.S.C. § 811(b), which prescribes the proce-dure to be followed when the Attorney General undertakes to "control" a drug by adding it to a schedule or transferring from one schedule to another. Casey's contentions focus on the function of the Secretary of Health, Education and Welfare ("HEW") under that provision.

The CSA requires the Attorney General, "after gathering the necessary data[, to] request from the Secretary [of HEW] a scientific and medical evaluation, and his recommendations, as to whether such drug . . . should be so controlled. . . ." 21 U.S.C. § 811(b). The CSA goes on to prescribe that "in making such evaluation and recom-mendations, the Secretary shall consider" certain specified factors, and that *"[t]he evaluation* and the recommendations of the Secretary shall be made in writing and submitted to the Attorney General within a reasonable time. The recommendations of the Secretary to the Attorney General shall be binding on the Attorney General as to such scientific and medical matters. . . . If the Attorney General determines that these facts and all other relevant data constitute substantial evidence of potential for abuse such as to warrant control . . ., he shall initiate proceedings for control. . . ." 21 U.S.C. § 811(b) (emphasis added).

Casey contends that the actions of the Secretary and of the Attorney General were deficient. He contends that although the Secretary made certain findings and recommendations, he did not perform the statutory obligation of making a "scientific and medical evaluation," and communicat-ing it in writing to the Attorney General. He contends further that because the At-torney General did not receive a scientific and medical evaluation in writing from the Secretary, the Attorney General was barred from proceeding to reschedule methamphetamine.[1]

I find there is no basis for Casey's con-tentions. The evidence submitted by the

---

1. As initially filed, Casey's motion papers also protested another alleged deficiency of compli-ance with Section 811(b). The opening sen-tence of that statute requires that the Attorney General "gather[ ] the necessary data before ini-tiating proceedings" to reschedule a drug. Ca-sey initially contended that the Attorney Gener-al had failed to gather the necessary data as required by the statute. After review of the answering papers submitted by the Govern-ment, in particular the affidavits of William Vodra and of Howard McClain, Jr., with sup-porting papers, Casey has dropped this conten-tion.

Government shows that its officials acted in accordance with the statutory requirements. It is true that 20 years later the evidence of what exactly was done is somewhat thin. Nonetheless the evidence does support the fact that both the Attorney General and the Secretary of HEW acted in compliance with the statutory requirements. Casey has made no showing suggesting the contrary.

## FACTS

The affidavits of William Vodra[2] and Howard McClain, Jr.[3] show that in early 1971, shortly after the passage of the CSA, the Department of Justice ("DOJ" or "Justice") undertook to reschedule methamphetamines from Schedule III to Schedule II. The Bureau of Narcotics and Dangerous Drugs ("BNDD"),[4] DOJ, acting under authority delegated by the Attorney General, undertook (as required of the Attorney General by the statute) to gather "the necessary data." Large amounts of pertinent material were collected and from them a report was prepared entitled "Outline: Rescheduling Amphetamines to Schedule II under the Controlled Substances Act." BNDD thereupon submitted material to the Food & Drug Administration ("FDA") which was a part of HEW. The DOJ informally requested of HEW that it make the review and evaluation called for by the statute and furnish recommendations as to the rescheduling of methamphetamine. It appears that HEW undertook the requested analysis and evaluation. The Government's affidavits indicate that there was considerable informal communication between DOJ and HEW during this period on the subject. The Attorney General's representatives in BNDD waited to receive the response of the Secretary to the request. Eventually the HEW staff advised that although they had completed their review,

the Secretary of HEW would not furnish his evaluation and recommendation to BNDD because HEW had not received a formal request for such action. Accordingly, on May 7, 1971, John Finlator, Acting Director of BNDD, acting under authority of the Attorney General, made a formal request of HEW by letter. Finlator's letter began by noting his department's failure to date to make a "formal request of [HEW] to consider the medical and scientific data submitted informally to members of your staff on February 1, 1971...." He apologized for the oversight and stated that he was now making "that specific request." The letter concluded, "we presume we will receive your evaluation and recommendations in the near future."

On May 13, 1971, Elliot L. Richardson, Secretary of HEW, wrote a letter to Attorney General John N. Mitchell, stating that it was in response to the request by DOJ "(made informally in February and formally on May 7) that the Department of Health Education & Welfare consider the scientific and medical facts about the amphetamines and methamphetamines and recommend the proper schedule...."

Secretary Richardson's letter went on to state:

"I have considered these drugs as provided in Section 201(b) giving specific attention to the factors listed in paragraphs 2, 3, 6, 7 and 8 of subsection (c) of that section and the scientific or medical considerations involved in paragraph 4 and 5 of such subsection. I find that the amphetamines and methamphetamines have a high potential for abuse and are being widely abused; that the drugs have currently acceptable medical uses in treatment in the United States; and that abuse of the drugs may lead to severe psychological and physical dependence

**2.** Vodra was Attorney Adviser in the Office of Chief Counsel, Bureau of Narcotics and Dangerous Drugs, Department of Justice from January 1971 through September 1972. From September 1972 through March 1974 he was Assistant Counsel in that office.

**3.** McClain is Chief, Drug and Chemical Evaluation Section, Office of Diversion Control, Drug Enforcement Agency. In the early 1970s, he was a pharmacologist at the Bureau of Narcotics and Dangerous Drugs and was involved with all scheduling actions undertaken after passage of the CSA.

**4.** In July 1973, the BNDD was redesignated the Drug Enforcement Agency.

and has led to such severe dependence. Accordingly I recommend that the amphetamines and methamphetamines be placed in Schedule II...."

Following receipt of this letter, DOJ undertook the statutorily required steps for rescheduling of methamphetamine into Schedule II and it was so rescheduled.

\*     \*     \*     \*     \*     \*

Casey contends it is not shown that the Secretary of HEW made the requisite "scientific and medical evaluation," and that the letter submitted by the Secretary to the Attorney General did not comply with the statutory requirement that "the evaluation and the recommendations of the Secretary[ ] be made in writing...." Casey's arguments are hypertechnical. I cannot agree with them.

As to whether the Secretary in fact performed an evaluation, it is the fair inference of his letter of May 13, 1971, that he did so. The Attorney General's delegatee, BNDD, requested HEW to do so both informally in February and more formally by the Finlator letter. The Secretary replied to BNDD's formal request to the effect that he had given specific attention to the factors specified in the statute and stated his medical and scientific findings relating to methamphetamine. It is the unmistakable inference of this exchange of letters that the Secretary performed a medical and scientific evaluation.

Casey suggests nothing to the contrary. He argues only that the Government should be required to prove more convincingly with contemporaneous documentation that this was done. There is no such requirement.

Casey argues that because the Secretary's language tracks the language of the statute, it should be regarded as mere parroting which is not to be taken at face value as to what the Secretary actually did. There is no force to this argument. The fact that a cabinet officer uses the language of a statute to assert that he has done exactly what the statute calls for is not a sufficient reason for finding the contrary.

Secondly, Casey contends that the Richardson letter did not comply with the requirement of Section 811(b). Section 811(b) requires the Secretary to deliver a medical and scientific evaluation in writing. Secretary Richardson's letter does not describe his conclusions as an "evaluation." He states rather that he has made certain "findings" with respect to methamphetamine's potential for abuse, acceptance in medical uses, and capacity to cause psychological and physical dependence. Regardless whether the Secretary described that conclusion as a finding or as an evaluation, it is clear that it does constitute an evaluation. Describing it as a "finding" is not incompatible with its being an "evaluation." Indeed, if anything, the contrary is true; an evaluation is implicit in the making of a finding.

Because I find that the Secretary of HEW did make the required evaluation in writing, Casey's third contention—that the Attorney General could not lawfully proceed to reschedule because he had not received the required evaluation in writing from the Secretary—fails. The court concludes that Casey has failed completely to muster any meaningful challenge to the lawful and effective rescheduling of methamphetamine into Schedule II. *See United States v. Lane*, 931 F.2d 40, 41 (11th Cir. 1991) (BNDD followed proper procedures in rescheduling methamphetamine); *United States v. Roark*, 924 F.2d 1426, 1428–1429 (8th Cir.1991) (same) *United States v. Kendall*, 887 F.2d 240, 241 (9th Cir.1989) (same).

## CONCLUSION

The petition under 28 U.S.C. § 2255 is accordingly dismissed and the motion under Rule 35, Fed.R.Crim.P., is denied.

SO ORDERED.