**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Russell SULLIVAN, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mary Ann SULLIVAN, Defendant–Appellant.**

Nos. 91–7046, 91–7047.

United States Court of Appeals, Tenth Circuit.

June 12, 1992.

---

Craig Bryant, Asst. Federal Public Defender, Tulsa, Okl., for defendant-appellant in No. 91–7046.

Peter Goldberger, Philadelphia, Pa., for defendant-appellant in No. 91–7047.

Sean Connelly, Dept. of Justice, Washington, D.C. (John Raley, U.S. Atty., and Sheldon J. Sperling, Asst. U.S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Before McKAY, Chief Judge, EBEL, Circuit Judge, and KANE, District Judge.*

EBEL, Circuit Judge.

Russell and Mary Ann Sullivan raise two issues challenging the legality of the sen-

* The Honorable John L. Kane, Jr., Senior Judge, United States District Court for the District of Colorado, sitting by designation.

tences imposed on them for their role in a drug trafficking enterprise. First, was amphetamine improperly reclassified as a Schedule II controlled substance in 1971? Second, were the appellants' sentences vindictive, disparate, or improperly calculated?[1] We answer both questions in the negative. Accordingly, we affirm the appellants' sentences.

## I. BACKGROUND

In August 1988, the appellants were indicted, along with four other individuals, in the United States District Court for the Eastern District of Oklahoma.[2] Russell and Mary Ann Sullivan, who are husband and wife, were convicted of conspiracy to manufacture, possess, and distribute amphetamine; attempt to manufacture amphetamine; use of a firearm during drug offenses; cultivation of marijuana; and possession of an unregistered firearm. In addition, Russell Sullivan was convicted of possession of firearms after having been convicted of a felony. Russell Sullivan was sentenced to an aggregate term of 25 years imprisonment, and Mary Ann Sullivan was sentenced to an aggregate term of 23 years imprisonment.

In November 1990, this Court reversed these convictions and remanded for further proceedings. *See United States v. Sullivan*, 919 F.2d 1403, 1437 (10th Cir.1990). On remand, in lieu of a second trial, the appellants pleaded guilty to some counts in

exchange for the dismissal of others. Russell Sullivan was sentenced to an aggregate term of 20 years imprisonment, and Mary Ann Sullivan was sentenced to an aggregate term of 15 years imprisonment.

The appellants now challenge the legality of the sentences imposed on them following their successful appeal to the Tenth Circuit. Although the appellants argued their cases separately, the issues presented on appeal are closely related. Accordingly, this Court will decide both cases in this single opinion.

## II. DISCUSSION

### A. *Amphetamine Was Properly Reclassified as a Schedule II Controlled Substance.*

▉ Amphetamine has been listed as a Schedule II substance since July 7, 1971. The appellants contend, however, that amphetamine was never properly transferred from a Schedule III controlled substance to a Schedule II controlled substance. Specifically, the appellants argue that the Secretary of the Department of Health, Education, and Welfare ("HEW") never prepared a written scientific and medical evaluation of amphetamine as required by 21 U.S.C. § 811(b).[3] Therefore, according to the appellants, amphetamine remains a Schedule III controlled substance.

Classification is significant because the maximum sentence for offenses involving

---

1. The appellants also assert that their indictment was improperly amended to charge an offense under 21 U.S.C. § 846 rather than 18 U.S.C. § 371. Both Russell and Mary Ann Sullivan raised this issue in their prior appeal to this court and received a ruling adverse to them. *See United States v. Sullivan*, 919 F.2d 1403, 1433-37 (10th Cir.1990). That ruling is now final. Accordingly, we do not again address that issue on this appeal.

2. *See Sullivan*, 919 F.2d at 1408-10 for a thorough discussion of the events that gave rise to the indictment.

3. Under § 811(b), the Secretary must provide the Attorney General with "a [written] scientific and medical evaluation, and his recommendations, as to whether [a] drug or other substance should be ... controlled or removed as a con-

trolled substance." In making this evaluation and these recommendations, the Secretary must consider the following factors with respect to each drug or other substance proposed to be controlled or removed from the schedules:

(1) Its actual or relative potential for abuse.
(2) Scientific evidence of its pharmacological effect, if known.
(3) The state of current scientific knowledge regarding the drug or other substance.
(4) Its history and current pattern of abuse.
(5) The scope, duration, and significance of abuse.
(6) What, if any, risk there is to the public health.
(7) Its psychic or physiological dependence liability.
(8) Whether the substance is an immediate precursor of a substance already controlled under this subchapter.
21 U.S.C. § 811(b), (c).

Schedule III controlled substances was 5 years during the relevant time period, whereas the maximum sentence for offenses involving Schedule II controlled substances was 15 years. Russell and Mary Ann Sullivan received a 10–year and a 15–year term of imprisonment respectively for their roles in the conspiracy to manufacture, possess, and distribute amphetamine. Thus, their sentences exceeded the statutory maximum for Schedule III controlled substances.

We hold, however, that amphetamine was properly classified as a Schedule II controlled substance pursuant to 21 C.F.R. § 1308.12(d). The Secretary of HEW, Elliot L. Richardson, did indeed transmit a letter to the Attorney General, John N. Mitchell, that contained a scientific and medical evaluation of amphetamines and methamphetamines. The letter stated, in pertinent part,

> This responds to the request by your department ... that the Department of Health, Education and Welfare consider the scientific and medical facts about the amphetamines and methamphetamines and recommend the proper schedule for these drugs under the Comprehensive Drug Abuse Prevention and Control Act of 1970 (P.L. 91–513).
>
> I have considered these drugs as provided in Section 201(b) giving specific attention to the factors listed in paragraphs (2), (3), (6), (7) and (8) of subsection (c) of that Section, and the scientific or medical considerations involved in paragraphs (1), (4), and (5) of such subsection. I find that the amphetamines and methamphetamines have a high potential for abuse and are being widely abused; that the drugs have currently accepted medical uses in treatment in the United States; and that abuse of the drugs may lead to severe psychological and physical dependence and has lead to such severe dependence. Accordingly, I recommend that the amphetamines and methamphetamines be placed in Schedule II under the provisions of Section 202 of the above-mentioned law.

Letter from Secretary of the Department of Health, Education and Welfare to Attorney General (May 13, 1971). Although, in retrospect, a more detailed evaluation would have been preferable, we conclude that this evaluation was adequate.

Our decision that amphetamine was properly classified as a Schedule II controlled substance is in accord with *United States v. Casey,* 788 F.Supp. 725 (S.D.N.Y.1991), *aff'd sub nom. United States v. Alexander,* 962 F.2d 199 (2d Cir.1992), the only federal case that appears to address this exact procedural challenge.[4] In *Casey,* the court rejected the defendant's argument that the above-mentioned letter constituted an insufficient scientific and medical evaluation so as to render the rescheduling of methamphetamine ineffective. *Id.* at 727. The court recognized that "[i]t is true that 20 years later the evidence of what exactly

---

4. The appellant in *United States v. Lane,* 931 F.2d 40 (11th Cir.1991), challenged whether the Attorney General followed the statutory guidelines for reclassification of methamphetamine (a derivative of amphetamine), but focused on whether the eight factors listed in 21 U.S.C. § 811(c) and input from the Secretary of Health and Human Services were ever considered. *Id.* at 41. The court held that "the Attorney General and the [Bureau of Narcotics and Dangerous Drugs] followed the proper procedures in reclassifying methamphetamine." *Id.* (footnote omitted); *see also United States v. Kendall,* 887 F.2d 240, 241 (9th Cir.1989) (per curiam) (court rejected the appellant's argument that reclassification of methamphetamine was ineffectual because the Bureau of Narcotics and Dangerous Drugs lacked authority to reschedule controlled substances).

Both *United States v. Youngblood,* 949 F.2d 1065, 1066 (10th Cir.1991), and *United States v. Roark,* 924 F.2d 1426, 1428 (8th Cir.1991), held that methamphetamine was properly classified as a Schedule II controlled substance. However, the appellants in *Youngblood* and *Roark* challenged the classification not because of a procedural defect in the written evaluation of the Secretary of HEW, but rather because products containing methamphetamine can be sold over the counter and therefore should be excluded from the schedules of controlled substances under 21 U.S.C. § 811(g)(1). *Roark* also concluded that the Attorney General and the Bureau of Narcotics and Dangerous Drugs had followed correct procedures and made the necessary finding to reclassify methamphetamine, but *Roark* did not expressly address whether the Secretary of HEW had submitted the proper written evaluation.

was done is somewhat thin." *Id.* Nevertheless, the court stated, "[a]s to whether the Secretary in fact performed an evaluation, it is the fair inference of his letter of May 13, 1971, that he did so." *Id.* at 728. The court went on to conclude that the letter itself constituted both a finding and an evaluation. *Id.* at 728. We agree with this analysis.

*B. The Appellants' Sentences Were Neither Vindictive Nor Disparate.*

1. Russell Sullivan

▐ Russell Sullivan examines his sentence count by count[5] and contends that the district court imposed a harsher sentence following his successful appeal, thereby violating his right to due process. Specifically, Sullivan complains that his 5-year term of imprisonment for Count 7 originally was to run *concurrently*, but later was changed to run *consecutively*.

▐ The Constitution limits, but does not absolutely prohibit, a judge's power to impose a harsher sentence upon remand from an appellate court. In *North Carolina v. Pearce*, 395 U.S. 711, 725–26, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969), the Supreme Court emphasized that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial ... [and] that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080. For this reason, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" to overcome a presumption of vindictiveness. *Id.* at 726, 89 S.Ct. at 2081.

▐ "[I]f *Pearce* vindictiveness is claimed, it should be adequately brought to the sentencing judge's attention so that the judge is given a fair opportunity to state on the record the pertinent reasons for the resentence." *United States v. Forester*, 874 F.2d 983, 984 (5th Cir.), *cert. denied*, 493 U.S. 920, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989). The appellants did not alert the sentencing judge to their vindictiveness claims. Accordingly, appellate review is limited to correcting plain errors that affect substantial rights and threaten a miscarriage of justice. *See United States v. Saucedo*, 950 F.2d 1508, 1511 (10th Cir. 1991); *Forester*, 874 F.2d at 984. The weighty demands of the plain error rule are not satisfied in this case.

Even if Russell Sullivan had raised the vindictiveness claim properly, his claim is without merit. We must examine Russell Sullivan's sentences in the aggregate rather than count by count. *See United States v. Vontsteen*, 910 F.2d 187, 192 (5th Cir. 1990) ("*Pearce* presumption inapplicable" where the defendant "did not receive a net increase in his sentence" but rather "only the sentence on [an individual count] was arguably increased."), *cert. denied*, —— U.S. ——, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991), *aff'd on reh'g*, 950 F.2d 1086 (5th Cir.1992) (en banc); *Kelly v. Neubert*, 898 F.2d 15, 18 (3d Cir.1990) ("Like the First and Seventh Circuits, we believe *Pearce*'s per se prophylactic rule should not be mechanically applied when some of the defendant's individual sentences are increased, but his aggregate sentence is reduced on remand following a successful appeal."); *United States v. Gray*, 852 F.2d 136, 138 (4th Cir.1988) ("[U]nder the 'aggregate package' rule[,] ... resentencing will not be considered vindictive if the ultimate sentence for one or more counts does not exceed that given for all counts sentenced

---

5. Sullivan was first sentenced to 20-year terms of imprisonment on Counts 1, 2, and 3 of the indictment, to run concurrently; a 10-year term of imprisonment on Count 5, to run concurrently with the sentences on Counts 1, 2, and 3; a 5-year term of imprisonment on each of Counts 6, 7, and 8, to run concurrently with the sentences on Counts 1, 2, 3, and 5; and a 5-year term of imprisonment on Count 4, to run consecutively with the sentences imposed on the prior counts. On remand, he was sentenced to a 10-year term of imprisonment on Count 1; a 60-month term of imprisonment on Count 7, to run consecutively with the above sentence; and a 5-year term of imprisonment on Count 4, to run consecutively with the sentences imposed for Counts 1 and 7.

at the conclusion of the first trial.") (citations and footnote omitted); *United States v. Bay*, 820 F.2d 1511, 1513 (9th Cir.1987) ("Our precedent thus instructs us to evaluate [the defendant's] sentence in the aggregate and not merely with respect to each individual count.").

Originally, Russell Sullivan was sentenced to a total of 25 years imprisonment. On remand, he was sentenced to a total of 20 years imprisonment. Bearing in mind that "sentencing is often a 'package deal,'" *see United States v. Welch*, 928 F.2d 915, 917 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 153, 116 L.Ed.2d 118 (1991), we conclude that Russell Sullivan actually received a lighter sentence on remand. Thus, his vindictiveness claim is without merit.[6]

2. Mary Ann Sullivan

Mary Ann Sullivan similarly contends that her sentence was a vindictive response to her decision to exercise her right to appeal. Because she too failed to alert the sentencing judge to her vindictiveness claim as required by *Forester*, appellate review remains limited to correcting plain error. Applying the same "package" analysis we used to examine Russell Sullivan's vindictiveness claim, we conclude that the sentence imposed upon Mary Ann Sullivan following her successful appeal was not the result of vindictiveness.

In fact, Mary Ann Sullivan's sentence on remand was lighter than her original sentence, whether her sentences are compared in the aggregate or by the count. Originally, Mary Ann Sullivan was sentenced to a total of 23 years imprisonment, 18 years for the drug conspiracy count and 5 years for the firearms count. On remand, she pleaded guilty to the drug conspiracy in return for a dismissal of other counts, and her sentence was reduced to 15 years imprisonment. Thus, her vindictiveness claim is without merit.

■ Mary Ann Sullivan further complains that she received a 15–year term of imprisonment for conspiracy whereas her equally culpable husband received only a 10–year term for the same offense. We review this claim under a plain error standard for "manifest injustice" because the disparity was not challenged in the sentencing court. *United States v. Sardin*, 921 F.2d 1064, 1067 & n. 2 (10th Cir.1990); *see also Saucedo*, 950 F.2d at 1511. We conclude that her sentence for the drug conspiracy count did not constitute plain error.

Mary Ann Sullivan asks us to compare the sentences of two defendants with different records who pled guilty to different charges. Mary Ann Sullivan was sentenced only for her role in the drug conspiracy. By contrast, the district court had to devise a total "package" for Russell Sullivan; he was sentenced both for his role in the drug conspiracy and for various firearms offenses. Given this difference in their situations, we cannot say that the respective sentences imposed for the drug conspiracy count were unreasonable.

*C. Russell Sullivan's Sentence Was Calculated Properly.*

■ Finally, Russell Sullivan contends that the Presentence Report improperly calculated the offense level for Count 7 of the indictment[7] and that the district court erred in accepting that calculation. We disagree.

The Presentence Report applied U.S.S.G. § 2K2.1 and concluded that the base offense level for Count 7 is 34 and the total offense level is 32. Russell Sullivan acknowledges that section 2K2.1 provides the appropriate guideline for violations of 18 U.S.C. § 922(g), but challenges the Report's use of the cross reference located in section 2K2.1(c)(1). At the time the offense at issue was committed, this cross reference provided: "If the defendant used the firearm in committing or attempting another offense, apply the guideline in re-

---

6. Russell Sullivan offers no evidence of actual vindictiveness.

7. Count 7 charged that Russell Sullivan, a felon, possessed a firearm (an AR–15 rifle) in violation of 18 U.S.C. § 922(g) on or about July 20, 1988.

spect to such other offense, or § 2X1.1 (Attempt or Conspiracy) if the resulting offense level is higher than that determined above." U.S.S.G. § 2K2.1(c)(1) (1988).[8]

Russell Sullivan contends that this cross reference is inapplicable because he did not use the firearm in committing or attempting to commit another offense; he simply kept the weapon at his house. He argues that his total offense level should be 7: a base offense level of 9 under section 2K2.1 with a two-level adjustment for acceptance of responsibility.

By contrast, the Presentence Report arrives at a total offense level of 32 by applying the cross reference on the basis that "[t]he Indictment, as well as information in the Offense Conduct section of this report, reflects that the weapon referenced in the count of conviction was used in or during the commission of another crime," namely the manufacture of marijuana plants and a conspiracy to manufacture amphetamine. The district court issued a five-year sentence because the Guideline range for a total offense level of 32 would have led to a sentence in excess of the statutorily authorized maximum punishment of five years for this crime. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

Whether Sullivan used the weapon in or during the commission of the crime of drug conspiracy is a question of fact. On review, "[w]e give due deference to the district court's application of the guidelines to the facts.... The district court's factual

determinations ... are reviewed under a clearly erroneous standard." *United States v. Haar,* 931 F.2d 1368, 1377 (10th Cir.1991) (citations omitted).

We cannot say that the district court's determination that Sullivan used this weapon in or during the commission of a crime is clearly erroneous in light of the following. In Sullivan's prior appeal, we stated that "there was ample evidence in this case from which a jury could infer that the defendants' access to firearms not only facilitated their drug manufacturing efforts, but also provided the type of protection the defendants believed they needed for their operation." *Sullivan,* 919 F.2d at 1421. Furthermore, a co-conspirator testified at trial that "Russell had in his possession a 'clip' that 'he could drop in his AR–15 in just a matter of seconds.' Russell said 'it would rock and roll then.'" *Id.* at 1409 (citations omitted). Accordingly, we affirm the sentence the district court imposed on Russell Sullivan for Count 7.

## III. CONCLUSION

For the reasons stated above, the appellants' sentences are AFFIRMED.

---

8. The government in its brief quotes a revised version of the cross reference in § 2K2.1(c)(1), which requires a sentencing court to adopt a higher offense level when "the defendant *used or possessed* the firearm in connection with commission or attempted commission of another offense." U.S.S.G. § 2K2.1(c)(1) (emphasis added). The government then concludes that this revised version is "substantially identical" to the version in effect at the time of Russell Sullivan's offense, quoted *supra.* Brief for the

United States at 17. In fact, however, the addition of the words "or possessed" constitutes an important difference. Had the phrase "or possessed" been in the Guideline at the time Russell Sullivan's offense was committed, the government's case would have been considerably stronger. We regard this mischaracterization as a breach of the government's obligation of candor and fair dealing both to this Court and to the defendant.