**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jaime S. MYERS, Defendant–Appellee.**

**No. 96–30135.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1997.

Decided April 25, 1997.

James Barkeley, Assistant United States Attorney, Anchorage, Alaska, for plaintiff-appellant.

Michael S. Taggart, Assistant Federal Public Defender, Anchorage, Alaska, for defendant-appellee.

Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge.

One provision of Section 2K2.1 of the sentencing guidelines requires adjustment of a defendant's offense level if a firearm is used or possessed "in connection with another felony offense." Another part of Section 2K2.1 requires application of other guidelines' provisions if the firearm is used or possessed "in connection with the commission or attempted commission of another offense." The United States appeals the district court's finding that the two provisions created an ambiguity which warranted applying the rule of lenity and the least severe guidelines' provision. We vacate and remand for resentencing.

FACTS AND PRIOR PROCEEDINGS

Appellee Jaime S. Myers was originally charged with Using and Carrying a Firearm in Relation to Drug Trafficking in violation of 18 U.S.C. § 924(c)(1) and three counts of Distribution of a Controlled Substance in violation of 18 U.S.C. § 841(a)(1). After some negotiations, he entered into a plea agreement with the Government.

Anticipating a sentence between seventy-two and seventy-eight months, Myers initially agreed to plead guilty to a superceding information charging him with using a firearm in relation to drug trafficking and being a prohibited person in possession of a firearm. The district court accepted his plea. However, when advised by the probation department that, because Myers' offense involved "crack cocaine," the cross-reference under guideline Section 2K2.1(c)(1)(A) called for a sentence of at least 157 months-more than double the sentence anticipated by the parties-the district court continued the proceedings in the hope that Congress would amend the guidelines to eliminate the distinction between crack cocaine and powder cocaine.

When Congress did not amend the guidelines, the district court allowed Myers to withdraw his plea, gave the parties an opportunity to negotiate a new agreement and set the matter for trial. Subsequently, Myers pled guilty to a second superceding information charging him with violating 18 U.S.C. § 922(g)(3), which prohibits unlawful users or addicts of controlled substances from possessing any firearm.

Under the second plea agreement, the parties "reached no agreement as to the applicability of a particular calculation or sentence range," but agreed that Myers "falls into a criminal history category of II, resulting in guideline sentence ranges of either 121–151,

or 97–121, months." Plea Agmt., Jan. 1996, at 4. Although Myers pled guilty to unlawful possession of firearms, in the "Factual Basis for the Plea," the agreement expressly acknowledged Myers' involvement with drug trafficking, stating that "[a] total of 71.1 grams of crack was sold, an amount established by lab reports and agreed to by defendant for sentencing purposes."

At sentencing, the district court did not accept the sentencing ranges in the plea agreement or the calculation of the offense level contained in the Presentence Investigation Report (PSR)-which took into account Myers' underlying drug trafficking offenses involving 71 grams of crack cocaine under the cross-reference provision contained in Section 2K2.1(c)(1)(A).[1]

The cross-reference under Section 2K2.1(c)(1)(A) states:

> If the defendant used or possessed any firearm or ammunition *in connection with the commission or attempted commission of another offense,* or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply-(A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above....

U.S.S.G. § 2K2.1(c)(1)(A) (Nov. 1, 1995) (emphasis added).

Despite the guideline ranges set forth in the plea agreement, at sentencing the defense argued that instead of Section 2K1.1(c)(1)(A), the district court should apply Section 2K2.1(b)(5) which states:

> If the defendant used or possessed any firearm or ammunition *in connection with another felony offense;* or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense

level is less than level 18, increase to level 18.

U.S.S.G. § 2K2.1(b)(5) (emphasis added).

As it considered the defendant's request and the language of the two foregoing guidelines' provisions, the district court said:

> [Those sections] say essentially the same thing ... [and] since they provide for disparate penalties, shouldn't the rule of leniency apply and the smaller of the two be applied? ... I'm having a hard time seeing how 2K2.1(b)(5) would not cover virtually everything that (c)(1)(A) would cover. I suppose you could argue that (b)(5) only refers to completed offenses. And that (c)(1)(a) refers to inchoate, or attempted but incomplete, offenses. But if that's the case, why would you impose a higher sentence?

Transcript of [Sentencing], March 25, 1996, at 28.

With respect to any factual findings related to the firearms possessed by Myers or his drug trafficking, the district court merely stated that: "[T]he amount, or quantity, of drugs are not at issue. And so it is not necessary, therefore, to further investigate the exact interplay between firearm or firearms in this case, and the three discrete transactions that Mr. Myers was involved in...." Transcript of [Sentencing] at 32.

Ultimately, the district court calculated a total offense level of 15 for Myers by: (1) starting with a base offense level of 14 under Section 2K2.1(a)(6); (2) increasing the base offense level by four levels under Section 2K2.1(b)(5); and (3) reducing the base offense level by three levels due to Myers' acceptance of responsibility under Section 3E1.1. Then, based on Myers' criminal history category of II, combined with a total offense level of 15, the district court sentenced Myers to twenty-seven months' imprisonment.

## STANDARD OF REVIEW

■ This court reviews the district court's interpretation and application of the sentenc-

---

**1.** The PSR calculated a sentencing range of 121–151 months. However, because 18 U.S.C. § 922(g)(3) provides for a 10-year statutory maximum, Myers could receive no more than 120–months' imprisonment.

ing guidelines *de novo.* *United States v. Shrestha,* 86 F.3d 935, 938 (9th Cir.1996).

## DISCUSSION

### A. *Section 2K2.1(b)(5) versus Section 2K2.1(c)(1)(A)*

In the plea agreement, the parties agreed that Section 2K2.1 is the section which applies, "at least as a starting point, for calculation of an estimated guideline sentence range pursuant to [Myers'] plea of guilty to the Second Superceding Information." The parties also agreed that Myers "falls into a criminal history category of II, resulting in guideline sentence ranges of *either* 121–151, or 97–121, months." Plea Agmt., at 4 (emphasis added). However, at Myers' sentencing and now, on appeal, the parties disagree about whether Myers' offense level should be calculated under Section 2K2.1(b)(5) or the cross-reference under Section 2K2.1(c)(1)(A).

The government argues that under Section 2K2.1(c)(1)(A) the district court was required to cross-reference Section 2X1.1 and then, based on Myers' drug trafficking of at least 71 grams of crack cocaine, to apply Section 2D1.1(c)(4). Since the base offense level for an offense involving at least 50 grams but less than 150 grams of cocaine base (a/k/a crack) is 32, and since 32 is "greater" than 18–Myers' base offense level under Sections 2K2.1(a) and (b)-the Government maintains that Myers' base offense level should be 32.

 In the Government's view, there is an automatic progression under the guidelines: apply Section 2K2.1(b)(5) and then apply Section 2K2.1(c)(1)(A). If the offense level under the latter section is higher, then the court must use that level. We disagree with such a generalized approach. Instead, for the reasons outlined below, we conclude that while a progression from Section 2K2.1(b)(5) to Section 2K2.1(c)(1)(A) may be appropriate in some cases, application of the cross-reference in Section 2K2.1(c)(1)(A) is *fact dependent*-not automatic.

### B. *The Rule of Lenity*

"[The] policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (*quoting Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)). But this policy can only be invoked in limited circumstances because, as the Supreme Court has explained, "[t]he rule of lenity ... is not applicable unless there is grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seized every thing from which aid can be derived, it is still left with an ambiguous statute." *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (internal quotations, citations and alterations omitted).

The district court focused on the similarity of the language in Section 2K2.1(b)(5) and Section 2K2.1(c)(1)(A) to conclude there was an ambiguity in the guidelines and to justify invoking the rule of lenity. In so doing, however, the district court disregarded differences in the language of those subsections; failed to make sufficient factual inquiries or findings; and effectively departed from the guideline ranges of 121–151 months, or 97–121 months contemplated in Myers' second plea agreement, as well as the 120–month sentence set forth in the PSR.

 We are not aware of any authority which has reached the conclusion that an ambiguity exists between Section 2K2.1(b)(5) and the cross-reference under Section 2K2.1(c)(1)(A). In cases where Section 2K2.1(b)(5) has been applied, there is no suggestion that the cross-reference under Section 2K2.1(c)(1)(A) was considered and then rejected on the basis of an ambiguity. Nor do we find the language contained in Section 2K2.1(b)(5) and Section 2K2.1(c)(1)(A) to create an ambiguity which warranted the invocation of the rule of lenity.

As noted above, the Government originally charged Myers with two counts of Using and Carrying a Firearm in Relation to Drug Trafficking in violation of 18 U.S.C. § 924(c)(1), and three counts of Distribution of a Controlled Substance in violation of 18

U.S.C. § 841(a)(1). When Myers pled guilty to a second superceding information charging him with violating 18 U.S.C. § 922(g)(3), which prohibits unlawful users or addicts of controlled substances from possessing any firearm, Myers' drug trafficking charges were dismissed. Notwithstanding the dismissal of those charges, however, in the "Factual Basis for the Plea," the plea agreement expressly acknowledged Myers' involvement with drug trafficking by stating that "[a] total of 71.1 grams of crack was sold, an amount established by lab reports and agreed to by defendant for sentencing purposes." Plea Agmt., at 6. That statement alone does not indicate whether Myers possessed a firearm "in connection with" the sale of crack or "in connection with the commission of" the crime of selling crack.

C. *The Necessity of an Evidentiary Hearing for Application of Section 2K2.1(b)(5) and/or Section 2K2.1(c)(1)(A) to Myers' Conduct*

■ We hold that the language contained in Section 2K2.1(b)(5) and Section 2K2.1(c)(1)(A) warrants a remand for an evidentiary hearing so the district court may clarify whether either or both of those sections should be applied to Myers' conduct.[2] For purposes of resentencing, the district court must determine: first, under Section 2K2.1(b)(5), whether Myers "used or possessed any firearm or ammunition *in connection with another felony offense;* or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense;" and, second, following that finding it must separately address under Section

2K2.1(c)(1)(A) whether Myers "used or possessed any firearm or ammunition *in connection with the commission or attempted commission of another offense ....*" U.S.S.G. §§ 2K2.1(b)(5) and 2K2.1(c)(1)(A) (emphasis added).[3]

The Sentencing Commission used different language in each of the subsections: "in connection with" is different from "in connection with the commission of." It is for the district court to determine the nexus between Myers' unlawful possession of firearms and his drug trafficking. If Myers merely possessed a firearm "in connection with" a drug trafficking offense (or offenses), Section 2K2.1(b)(5) applies. However, if Myers possessed a firearm "in connection with the commission of" a drug trafficking offense (or offenses), Section 2K2.1(c)(1)(A) may apply.

Though the guidelines do not set forth examples of occasions when Section 2K2.1(b)(5) should be applied, as opposed to the cross-reference under Section 2K2.1(c)(1)(A), the commentary following Amendment 374 of the sentencing guidelines explains:

> The firearm statutes are often used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he *used* the firearm to rob a gasoline station. In pre-guidelines practice, such prosecutions resulted in high sentences because of the true nature of the underlying conduct. The cross reference [containing the "commission or attempted commission" language] deals with such cases.

2. An evidentiary hearing is not necessary in every case involving the interplay between these two provisions of the sentencing guidelines. For example, if the district judge presided at a jury trial and is therefore familiar with the evidence, *see, e.g., United States v. Wheelwright,* 918 F.2d 226 (1st Cir.1990), or if the facts of the use by the defendant are set out in the PSR and no factual issue is raised, an evidentiary hearing would serve no purpose.

3. Use or possession of a firearm "in connection with the commission .... of another offense" under (c)(1)(A) will of necessity involve use or

possession "in connection with" that crime under (b)(5). If (c)(1)(A) is found to apply, in most instances, it will follow a decision that (b)(5) applies. However, a finding that (b)(5) applies does not compel a finding that (c)(1)(A) also applies. (We note that (b)(5) relates to "another felony offense" while (c)(1)(A) relates to "another offense." We need not address whether this difference in language is significant, as Myers' conduct involved only felonies. If the connected crime was a misdemeanor, (b)(5) would not apply, but (c)(1)(A) might. *See, e.g.,* U.S.S.G. § 2X5.1.)

U.S.S.G. App. C, Commentary, Background to Amendment 374 (1995) at 254 (emphasis added).

In *United States v. Collins,* 90 F.3d 1420, 1423 (9th Cir.1996), the defendant was convicted of being a felon in possession of a firearm. We upheld the application of Section 2K2.1(b)(5), where the district court added four points to the defendant's base offense level for possession of a firearm *in connection with another felony offense.* As we recognized in that decision:

> Enhancement under 2K2.1(b)(5) is proper whenever a firearm "facilitated or potentially facilitated-i.e., had some emboldening role in-a defendant's felonious conduct." Here, Collins carried a loaded pistol during a night-time burglary. It was not clearly erroneous to infer that the pistol had some emboldening role in Collins' felonious conduct.

*Id.* at 1430 (*quoting United States v. Routon,* 25 F.3d 815, 819 (9th Cir.1994)). *See also United States v. Polanco,* 93 F.3d 555, 566–67 (9th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996) (rejecting enhancement under Section 2K2.1(b)(5) for "use" of firearm in connection with felonious drug sales, but upholding enhancement based on "possession" of a firearm in connection with felonious drug sales).

With respect to the cross-reference under Section 2K2.1(c), we upheld the application of Section 2X1.1 and Sections 2A2.2(a) & (b)(2)(A) in *United States v. Humphries,* 961 F.2d 1421 (9th Cir.1992) (per curiam), where a defendant pled guilty to possessing a firearm despite having been convicted of a felony, but where evidence presented at the sentencing hearing was sufficient to establish that the firearm was used "in connection with the commission of" an aggravated assault. In particular, the defendant in *Humphries* "was arrested for pointing a handgun at a man with whom he had been arguing and then firing it next to the man's head." *Id.* at 1421.

The difference in wording in Sections 2K2.1(b)(5) and 2K2.1(c)(1), coupled with guideline commentary and the foregoing cases from this circuit, suggest that only subsection (b)(5) be applied when firearms

are merely present in connection with another offense, and that subsection (c)(1)(A) also be applied when firearms are actually used in connection with the commission of another offense.

To assist the district court in making the necessary factual findings and applying the appropriate subsection of the guidelines under Section 2K2.1, the Government and Myers are entitled to present evidence regarding what "connection" Myers' possession of firearms had with his drug trafficking offenses. And, despite the district court's previous inclinations, at that time of such an evidentiary hearing, "[*it will be*] ... necessary ... to further investigate the exact interplay between firearm or firearms in this case, and the three discrete transactions that Mr. Myers was involved in ..." *and,* depending upon the outcome of the district court's findings with respect to the firearms, "the amount, or quantity, of drugs [*may be*] ... at issue." Transcript of [Sentencing] at 32.

## CONCLUSION

The sentencing guidelines contained in Section 2K2.1(b)(5) and Section 2K2.1(c)(1)(A) are worded differently and are to be applied in different circumstances. In Myers' case, the determination of such circumstances and the proper application of one subsection, versus the other, depended on the district court's conducting an evidentiary hearing and making sufficient findings of fact to support the application of Section 2K2.1(b)(5), as opposed to Section 2K2.1(c)(1)(A). Here, the district court made no such factual findings, but instead improperly invoked the rule of lenity and enhanced Myers' base offense level under Section 2K2.1(b)(5).

Therefore, on remand the district court shall conduct an evidentiary hearing for the purpose of determining the "connection" of the firearms possessed by Myers with his drug trafficking offenses so that it may then determine whether Section 2K2.1(b)(5) or Section 2K2.1(c)(1)(A), or both, apply in order to arrive at an appropriate offense level and, ultimately, an appropriate sentence.

Myers' sentence is VACATED, and this matter is REMANDED for resentencing.

VACATED and REMANDED.

RYMER, Circuit Judge, concurring.

I concur in the judgment, but I do not agree that an evidentiary hearing is required, or that the cross-reference from U.S.S.G. § 2K2.1(b)(5) to § 2K2.1(c)(1)(A) must not be made.

Section 2K2.1(c) says on its face that it applies (requiring reference to the offense level of the drug offense) if the drug offense level is greater than the offense level determined under § 2K2.1(b)(5). It says nothing about a different degree of use or nexus, which the Sentencing Commission easily could have done if it meant to complicate sentencing for drug offenses where firearms are involved. Rather, the guideline means what it says: *if* the other offense has a lower offense level because, for example, the drugs weren't as potent or the quantity wasn't so high, then the firearms offense level trumps, whereas *if* the other offense has a higher offense level because the quality or quantity of drugs is greater, then the drug offense level prevails. Plainly the point is to punish as much as possible for using or possessing a firearm in connection with any other felony. As the Application Note to U.S.S.G. § 1B1.5 makes clear, there is no magic to the phrase "in connection with"; it simply connotes being "involved" in the offense.[1] Because a cross-reference provision requires use of the greatest offense level possible, I would reverse.

While I have no problem leaving the question of "use" to the district court on remand, I would not send it back with baggage. Myers referred to the firearm twice and said it was for security. That's "use" to me. *See,*

*e.g., United States v. Wheelwright,* 918 F.2d 226 (1st Cir.1990).

---

**1.** Application Note 3 to § 1B1.5 states:

A reference may direct that, if the conduct involved another offense, the offense guideline for such other offense is to be applied. Where there is more than one such other offense, the most serious such offense (or group of closely related offenses in the case of offenses that would be grouped together under § 3D1.2(d)) is to be used. For example, if a defendant convicted of possession of a firearm by a felon, to which § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition) applies, is found to have possessed that firearm during commission of a series of offenses, the cross reference at § 2K2.1(c) is applied to the offense resulting in the greatest offense level.

U.S.S.G. § 1B1.5 commentary, application note 3.