**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FELICIA MISTY VALDEZ,

Defendant - Appellant.

No. 06-8061
(D. Ct. No. 05-CR-243-D)
(D. Wyo.)

---

**ORDER AND JUDGMENT***

---

Before **TACHA**, Chief Circuit Judge, **MURPHY**, Circuit Judge, and **LUNGSTRUM**, District Judge.†

---

Defendant-Appellant Felicia Valdez pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The District Court sentenced her to 100 months' imprisonment. Ms. Valdez appeals her sentence, arguing that it is both procedurally and substantively unreasonable. We have jurisdiction under 28 U.S.C. § 1291 and we AFFIRM.

---

*This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

†The Honorable John W. Lungstrum, Chief District Judge of the United States District Court for the District of Kansas, sitting by designation.

# I. BACKGROUND

On July 2, 2005, Ms. Valdez drove Enrique Moncada and Eric Orozco from Greeley, Colorado to Gillette, Wyoming, where, for the next five days, they sold several ounces of methamphetamine and crack-cocaine to various individuals. On the return trip on July 8, 2005, a deputy from the Campbell County, Wyoming Sheriff's Department stopped their vehicle and discovered that Ms. Valdez was carrying two guns in her purse. The deputy also discovered $3000 in cash in the vehicle, as well as ammunition, scales, tools, and a plastic bag containing a crystalline white residue. He arrested Ms. Valdez for carrying concealed weapons.

That day, Agent Gary Sams of the Division of Criminal Investigations interviewed Ms. Valdez after reading her her *Miranda* rights. During the interview, Ms. Valdez discussed her role in the previous week's drug trafficking activities as well as her historical involvement with drugs. She revealed that she started dealing crack cocaine when she was fourteen years old and that for two years she sold approximately one ounce per day. For the six months immediately preceding her arrest, however, she had ceased selling drugs and had transferred her customers to Mr. Orozco.

She then recounted that Mr. Moncada, Mr. Orozco, and Christina Starr went to her house on July 2. While there, Mr. Moncada showed her a handgun he had bought three weeks prior. Mr. Orozco told Ms. Valdez that he and Mr. Moncada had made four drug runs to Gillette in the past six months and that they obtained their supply from a man named "Jorge," who was Ms. Valdez's former supplier. Mr. Orozco told Ms. Valdez that

he had two ounces of methamphetamine to sell (he showed her one ounce) and asked if she would drive them and Ms. Starr first to Loveland, Colorado, and then to Gillette. She agreed.

Once in Gillette, the foursome stopped at one individual's house where Mr. Orozco sold him one ounce of crack cocaine. Ms. Valdez assisted in counting the money. They then went to Ms. Starr's apartment where several other individuals dropped by to buy drugs. Ms. Valdez witnessed many of these transactions. On July 4 or 5, Mr. Orozco bought a gun affixed with a laser scope. For the next several days, Mr. Orozco and Mr. Moncada bought and sold crack cocaine and methamphetamine. They, along with Ms. Valdez, also used some of the drugs.

Ms. Valdez, Mr. Moncada, and Mr. Orozco were leaving Gillette on July 8 when they were pulled over. While the deputy was approaching the vehicle, Mr. Moncada and Mr. Orozco handed their guns to Ms. Valdez to put in her purse. She was arrested for carrying concealed weapons.

Ms. Valdez was charged in a two-count indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count One), and for being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3) (Count Two). Ms. Valdez pleaded guilty to Count One in exchange for the Government's dismissal of Count Two.

At sentencing, the District Court applied the 2005 United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") § 2K2.1 to determine Ms. Valdez's

offense level. Because the court found that Ms. Valdez possessed a firearm in connection with the commission of another offense—drug trafficking—it applied § 2K2.1(c)(1)(A)'s cross-reference to § 2X1.1. Section 2K2.1(c)(1)(A) instructs a district court to apply the offense level of the other offense—determined here with reference to § 2D1.1, the Guideline applicable to drug trafficking offenses—if it is higher than that determined under § 2K2.1. In this case, the drug trafficking offense did result in a higher offense level, and the District Court sentenced Ms. Valdez at the bottom of the resulting Guidelines range—100 months' imprisonment. Ms. Valdez appeals that determination, arguing that the District Court erred in applying § 2K2.1(c)(1)(A)'s cross-reference provision. She also argues that her sentence is unreasonably long.

## II. DISCUSSION

We review sentences imposed post-*Booker* for reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). Reasonableness has both procedural and substantive components. *See id.* at 1055 ("[T]he reasonableness standard of review . . . necessarily encompasses both the reasonableness of the length of the sentence, as well as the method by which the sentence was calculated." (emphasis omitted)). "In order to be procedurally reasonable, a sentence must be reasoned, or calculated utilizing a legitimate method." *United States v. Mateo*, 471 F.3d 1162, 1166 (10th Cir. 2006) (quotations omitted). Consequently, "sentences based on miscalculations of the Guidelines are considered unreasonable because the manner in which they were determined was unreasonable." *United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006) (quotations and

alterations omitted). In considering the district court's application of the Guidelines, we review its factual findings for clear error and its legal determinations de novo. *Kristl*, 437 F.3d at 1054. We review substantive reasonableness by reference to the length of the sentence imposed in relation to the sentencing factors set forth in 18 U.S.C. § 3553(a), reviewing the district court's decision for abuse of discretion. *See United States v. Garcia-Lara*, — F.3d —, —, 2007 WL 2380991, at *1 (10th Cir. 2007) (explaining that all of our post-*Booker* case law reviews "a district court's sentence for abuse of discretion, asking whether it is reasonable under the § 3553(a) factors").

A.     Application of U.S.S.G. § 2K2.1(c) Cross-Reference

Section 2K2.1 provides the appropriate Guideline for violations of 18 U.S.C. § 922(g). The cross-reference provision of § 2K2.1(c)(1) instructs that, "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense" the district court must apply § 2X1.1 "in respect to that other offense, if the resulting offense level is greater than that determined above."[1] Ms. Valdez argues the cross-reference provision is inapplicable here because she neither possessed nor used the guns in committing another offense. Rather, she argues, she merely possessed the weapons immediately before the deputy approached their vehicle and that at that time, the drug trafficking was complete. We find no error in

_____

[1]Section 2X1.1, in turn, instructs a district court to apply "the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). The District Court found that the substantive offense was drug trafficking and therefore determined Ms. Valdez's offense level under § 2D1.1.

- 5 -

the District Court's determination that the Guideline provision applied.

At the sentencing hearing, Ms. Valdez, through her attorney, admitted that she aided and abetted drug trafficking. *See United States v. Buonocore*, 416 F.3d 1124, 1134 (10th Cir. 2005) (treating admissions of defense counsel at sentencing as admissions of the defendant). Specifically, counsel for Ms. Valdez acknowledged that "she did what would commonly be considered as aiding [Mr. Orozco and Mr. Moncada] in [drug] distribution as she counted money" and by participating in "additional activities." Further, Ms. Valdez admitted that during the course of the drug trafficking, the guns "certainly were accessible[] and she had knowledge of their presence."[2] The District Court's determination that she at least constructively possessed the firearms between July 3 and July 7, then, is not clearly erroneous. *See United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007) (stating that constructive possession exists when a person "knowingly holds the power and ability to exercise dominion and control over a firearm" and that the power to exercise dominion and control over a firearm may be inferred from evidence that the defendant "has knowledge of and access to the weapons." (alteration, quotations, and citation omitted)). She also admitted that she had actual possession of the guns on the return trip, while the threesome were carrying drug proceeds and other drug paraphernalia in the car. Thus, the only remaining question is whether the District

---

[2]Defense counsel further stated that the court is "not supposed to ignore" the fact that the guns were as available to Ms. Valdez as to Mr. Orozco or Mr. Moncada, but that "the question [the District Court] is being asked to consider is [whether] she used a firearm in the commission of the offense."

Court's determination that Ms. Valdez possessed the firearms "in connection with the commission" of the drug trafficking offense is clearly erroneous. *See United States v. Sullivan*, 967 F.2d 370, 376 (10th Cir. 1992) ("Whether [the defendant] used the weapon in or during the commission of the crime of drug conspiracy is a question of fact."). We conclude that it is not.

A firearm that "facilitate[s] or ha[s] the potential to facilitate the underlying [offense]" is possessed "in connection with" the underlying offense. *See United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998) (upholding enhancement under § 2K2.1(b)(5) when guns were located in close proximity to drugs). We have previously noted that handguns are "widely recognized as a tool of the drug dealers trade," *see id.*, and that they are often used to facilitate an offense "by providing a means of protection or intimidation," *see United States v. Constantine*, 263 F.3d 1122, 1126 (10th Cir. 2001) (upholding enhancement under § 2K2.1(b)(5) when defendant carried gun to burglary because the gun "could provide [a] means of protection and intimidation" (quotation omitted)); *Sullivan*, 967 F.2d at 376 (upholding enhancement under § 2K2.1(c)(1) when "there was ample evidence . . . that the defendants' access to firearms not only facilitated their drug manufacturing efforts, but also provided the type of protection the defendants believed they needed for their operation" (quotation omitted)); *see also United States v. Stobaugh*, 420 F.3d 796, 802 (8th Cir. 2005) (stating that § 2K2.1(c) applies when the firearm has "some purpose or effect with respect to the drug trafficking crime" and it "facilitate[s], or [has] the potential of facilitating, the drug trafficking crime" (quotations

- 7 -

omitted)). As such, a weapon's close proximity to drugs may be sufficient to conclude that the weapon was possessed in connection with a drug offense. *See United States v. Browning*, 252 F.3d 1153, 1160 (10th Cir. 2001) (explaining that "proximity" of a weapon and narcotics can demonstrate the connection necessary to support an enhancement under U.S.S.G. § 2K2.1(b)(5)).

Ms. Valdez does not disagree with this general proposition. She contends, however, that she never actually possessed a firearm in close proximity to drugs. According to Ms. Valdez, Mr. Moncada and Mr. Orozco possessed the weapons from July 2 through July 7 and that when she took actual possession of the guns on July 8, there were no drugs left to protect. As noted above, however, the District Court concluded that Ms. Valdez had constructive possession of the guns between July 2 and July 7, a finding we cannot say is clearly erroneous. In any event, however, she had actual possession of the guns while they were transporting drug proceeds and paraphernalia back from Gillette to Greeley on July 8. Protecting drug proceeds is as much a part of drug trafficking as protecting the drugs themselves. *See United States v. Robinson*, 435 F.3d 1244, 1251 (10th Cir. 2006) (stating one factor relevant to whether defendant possessed a firearm "in furtherance of" drug trafficking is "the proximity of the firearm to drugs *or drug profits*" (emphasis added)); *United States v. Garner*, 338 F.3d 78, 81 (1st Cir. 2003) ("When guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may

- 8 -

reasonably be considered to be possessed 'in furtherance of' an ongoing drug-trafficking crime."). It is therefore inaccurate to say that the drug trafficking activity had ceased on July 7.

Ms. Valdez also contends that while the mere proximity of a weapon to drugs may support an enhancement under § 2K2.1(b)(5), it does not support an enhancement under § 2K2.1(c)(1). Specifically, she maintains that the difference in wording between the two subsections—(b)(5) applies when "the defendant used or possessed any firearm . . . in connection with another felony offense," whereas (c)(1) applies when "the defendant used or possessed any firearm . . . in connection with *the commission or attempted commission of another offense*," (emphasis added)—suggests that (b)(5) may apply when firearms are merely present during the drug trafficking, while (c)(1) may apply only when firearms are *actually used* in connection with the commission of the other offense. To this end, she notes that there is no evidence that anyone ever brandished either of the firearms to protect the drugs or proceeds or ensure a sale of drugs, or otherwise "used" the firearms in any way.

As an initial matter, we reject the weight Ms. Valdez gives to the phrase "in connection with *the commission . . . of* another offense." We acknowledge that the Ninth Circuit in *United States v. Myers*, 112 F.3d 406 (9th Cir. 1997) reached the conclusion that Ms. Valdez entreats us to reach here—namely, that for § 2K2.1(c)(1) to apply, the defendant must have "used" the firearms to commit the other offense. In so doing, however, the Ninth Circuit appears to have ignored the explicit language of (c)(1) stating

that the enhancement applies if the defendant "used *or possessed*" the firearm, a distinction we have previously noted is an "important" one. *See Sullivan*, 967 F.2d at 376 n.8.

Furthermore, under our case law, *access* to a firearm during a drug transaction, even if the firearm was not brandished, may constitute "use" under § 2K2.1(c)(1). In *Sullivan*, we interpreted an older version of § 2K2.1(c)(1) where the enhancement applied "[i]f the defendant used the firearm in committing or attempting another offense." *Id.* at 375-76 (citing U.S.S.G. § 2K2.1(c)(1) (1988)). That is, it did not allow for an enhancement based on the defendant's "possess[ion]" of a firearm as the enhancement does now. Even so, we upheld application of the enhancement when the defendant merely kept the weapon at his house, which was where he manufactured drugs. *See id.*; *see also Stobaugh*, 420 F.3d at 802 (applying enhancement, based on possession, when weapon was present at home from which defendant sold drugs); *Myers*, 112 F.3d at 412 (Rymer, J., concurring) ("[The defendant] referred to the firearm twice and said it was for security. That's 'use' to me.").

Here, Ms. Valdez had constructive possession of two weapons during the course of a trip for which the sole purpose was to traffic drugs. She had actual possession of the guns while they were transporting the drug proceeds back from Gillette to Greeley. We find no error in the District Court's determination that she possessed the firearms in connection with the commission of the drug trafficking offense.

Next, Ms. Valdez argues that application of § 2K2.1(c)(1) violates her Sixth

Amendment right to have a jury determine the facts supporting a sentencing enhancement beyond a reasonable doubt. For sentences imposed post-*Booker*, however, we have consistently rejected this argument. *See, e.g.*, *United States v. Hall*, 473 F.3d 1295, 1312 (10th Cir. 2007) ("After *Booker*, a constitutional violation lies only where a district court uses judge-found facts to enhance a defendant's sentence mandatorily under the Guidelines, and not where a court merely applies such facts in a discretionary manner." (alteration, quotation, and emphasis omitted)). That is, post-*Booker*, the Guidelines are discretionary and "a district court may continue to find facts . . . by a preponderance of the evidence." *Id.*

Ms. Valdez also argues that application of § 2K2.1(c)(1) amounts to non-constitutional *Booker* error, which occurs when the sentencing court applies the Guidelines in a mandatory, as opposed to discretionary, fashion. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731–32 (10th Cir. 2005) (en banc). It is clear in this case, however, that the District Court knew that the Guidelines were merely discretionary. Hence, the court did not commit non-constitutional *Booker* error.

B.    Reasonableness of Sentence

Finally, Ms. Valdez argues that even if the District Court properly calculated the Guidelines range, her sentence is nevertheless unreasonably long. She contends that she is essentially being punished for Mr. Orozco's and Mr. Moncada's conduct and that her participation in drug treatment and education programs at the time of her sentencing warrants a sentence below the applicable Guidelines range.

As noted above, we consider whether the sentence imposed by the district court is substantively unreasonable in light of the § 3553(a) factors, reviewing the district court's decision for abuse of discretion. *See Garcia-Lara*, — F.3d at —, 2007 WL 2380991, at *1. A sentence within the properly calculated Guidelines range is entitled to a presumption of reasonableness, *see Kristl*, 437 F.3d at 1054, an approach recently upheld by the Supreme Court in *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007). The defendant may rebut this presumption by demonstrating the sentence is "unreasonable when viewed against the other factors delineated in § 3553(a)." *Kristl*, 437 F.3d at 1054.

The District Court's sentence, 100 months' imprisonment, is at the bottom of the recommended guidelines range and is, thus, presumptively reasonable. To rebut this presumption, Ms. Valdez merely asserts that the District Court's findings were clearly erroneous, an argument we already rejected, and that she is participating in drug treatment and educational programs. She makes no reference to any of the other § 3553(a) factors. Ms. Valdez underestimates her burden to rebut the presumption of reasonableness accorded to her sentence, and she has not demonstrated that her sentence was otherwise unreasonable when viewed against the other § 3553(a) factors. Therefore, resentencing is not warranted in this case.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the District Court.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge