FILED
United States Court of Appeals
Tenth Circuit

November 18, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE MAURICIO VARELA, a/k/a
Mauricio Varela, a/k/a Archie Varela,

    Defendant-Appellant.

No. 08-2275

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-06-01022-RB-1)**

---

Leon Schydlower, El Paso, Texas,  for Defendant-Appellant.

Teresa L. Raymond, (Gregory J. Fouratt, United States Attorney, and Laura
Fashing, Assistant United States Attorney, Albuquerque, New Mexico, on the
brief), Assistant United States Attorney, Las Cruces, New Mexico, for Plaintiff-
Appellee.

---

Before **BRISCOE, McWILLIAMS,** and **MURPHY**, Circuit Judges.

---

**BRISCOE,** Circuit Judge.

---

Defendant Jose Mauricio Varela a/k/a Mauricio Varela a/k/a Archie Varela

("Varela") was convicted by jury trial of being a felon in possession of multiple

firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The district court

sentenced Varela to 120 months' imprisonment, the statutory maximum. Varela appeals his sentence, alleging the district court committed procedural error when it applied a cross reference in U.S.S.G. § 2K2.1(c)(1)(A) to calculate Varela's base offense level.

We have jurisdiction over Varela's timely appeal pursuant to 28 U.S.C. § 1291, and affirm.

I

Pursuant to the execution of arrest and search warrants, police officers found methamphetamine and two handguns inside a vehicle Varela was driving, and additional firearms, explosive-related items, narcotics, and drug paraphernalia at Varela's home. Varela was charged in a three-count indictment of: (1) possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); (2) carrying firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) being a felon in possession of multiple firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

At Varela's first trial, the district court declared a mistrial. Following the mistrial, the district court severed Count 3 from Counts 1 and 2. Varela then proceeded to trial on the narcotics counts (Counts 1 and 2). That trial also ended in a mistrial, however, because of prosecutorial disclosure issues. The United States then moved to dismiss Counts 1 and 2, and the district court granted the

2

motion.  Varela then proceeded to trial on Count 3, the felon in possession of firearms charge, and the jury found him guilty of the offense.

Prior to Varela's sentencing, the probation office prepared a presentence report ("PSR").  The final version of the PSR[1] first calculated Varela's offense level according to U.S.S.G. § 2K2.1(a) and (b).  Under subsection (a)(6), Varela had a base offense level of 14 for being a prohibited person at the time he committed the offense.  Then, the PSR applied three separate increases to Varela's offense level: a four-level increase for possessing eleven firearms pursuant to subsection (b)(1), a two-level increase for possessing destructive devices pursuant to subsection (b)(3),[2] and a four-level increase for using or possessing firearms in connection with another felony offense pursuant to subsection (b)(5).  These calculations resulted in an offense level of 24.

Then, the PSR noted that a cross reference under U.S.S.G. § 2K2.1(c)(1)(A) would apply if it resulted in a greater offense level than that calculated under

---

[1] Varela's PSR was revised after Varela objected to each enhancement applied in his original PSR.  The original PSR calculated Varela's base offense level using the enhancement found in U.S.S.G. § 2K2.1(b)(5), resulting in an advisory guideline range of 63 to 78 months' imprisonment.

The probation office used the 2005 edition of the Sentencing Guidelines throughout to calculate Varela's advisory guideline range, to which neither party objected.

[2] The government conceded to the district court that the evidence was not sufficient to warrant the two-level increase pursuant to section 2K2.1(b)(3)(B).  See ROA, Vol. I, at 297.  Because the PSR ultimately applied the cross reference in subsection (c)(1)(A), the erroneous inclusion of the two-level enhancement under subsection (b)(3)(B) does not affect the ultimate guidelines calculation.

3

subsections 2K2.1(a) and (b). The PSR concluded subsection (c)(1)(A) should apply, as well as its reference to U.S.S.G. § 2X1.1. Utilizing U.S.S.G. § 2X1.1, the PSR calculated Varela's offense level using the guideline for possession with intent to distribute 150 to 500 grams of methamphetamine "ice,"[3] which generated an offense level of 34. See U.S.S.G. § 2D1.1(c)(3)("Drug Quantity Table"). The PSR then used the greater of the offense levels, 34, which was calculated pursuant to the cross reference under subsection (c)(1)(A).

Finally, the PSR applied a two-level obstruction adjustment pursuant to U.S.S.G. § 3C1.2, resulting in a total offense level of 36. Combined with his criminal history category of I, the resulting advisory guideline sentencing range was 188 to 235 months' imprisonment. But because the statutory maximum sentence under 18 U.S.C. § 924(a)(2) is ten years, the advisory guideline sentence was 120 months' imprisonment.

At the sentencing hearing, Varela objected to the utilization of the cross reference provision in subsection (c)(1)(A). The district court found:

> Evidence presented to the Court indicated that Defendant

---

[3] "Ice" is defined as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c) n.(C). At the sentencing hearing, Varela argued that the trial testimony indicated that the methamphetamine was 75% pure, which would not have reached the purity required of "ice." Nonetheless, Varela agreed that the PSR's "calculations remain correct because, if you take the actual amount, that 34 level still applies." ROA, Vol. III, at 449–50. It is not disputed on appeal that if subsection (c)(1) applies, the base offense level would be 34 before any enhancements.

4

> used or possessed multiple firearms in connection with 166 net grams of methamphetamine, cash, and items commonly used for drug distribution. Although the drug charge was dismissed (for reasons unrelated to the sufficiency of the evidence) after the mistrial, the evidence established, by at least a preponderance, that Defendant possessed methamphetamine with intent to distribute in close proximity of several firearms.

ROA, Vol. I, at 317 ("Memorandum Opinion and Order"). Then, the district court concluded that based on these findings, application of the cross reference under section 2K2.1(c)(1)(A) was appropriate and lawful, and sentenced Varela to the statutory maximum of 120 months' imprisonment. Varela's timely appeal challenges the district court's guidelines calculation.

## II

In a sentencing appeal, we review the district court's "legal conclusions de novo and its factual findings for clear error." United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006). "A non-harmless error in calculating the Guidelines range renders the sentence unreasonable and entitles the defendant to resentencing." United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1215 (10th Cir. 2008).

Varela argues that the district court erred by employing the cross reference provision in U.S.S.G. § 2K2.1(c)(1)(A) in its determination of Varela's offense level under the Guidelines. At sentencing, the district court adopted the guideline calculation contained in the PSR and applied the following cross reference:

5

(c)     Cross Reference

(1)     If the defendant <u>used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense</u>, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply --

(A)     §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, <u>if the resulting offense level is greater than that determined above</u>;

U.S.S.G. § 2K2.1(c)(1)(A) (emphasis added). Section 2X1.1(a) provides that the

base offense level would be "[t]he base offense level from the guideline for the

substantive offense, plus any adjustments from such guideline for any intended

offense conduct that can be established with reasonable certainty."

Varela contends that the district court should not have used the cross

reference in subsection (c)(1)(A), but instead should have used subsection (b)(5)

to calculate his offense level. Subsection (b)(5) states:

If the defendant <u>used or possessed any firearm or ammunition in connection with another felony offense</u>; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by **4** levels. If the resulting offense level is less than level **18**, increase to level **18**.

U.S.S.G. § 2K2.1(b)(5)(2005) (underlining emphasis added). According to

Varela, the Guidelines provide no guidance regarding when to use subsection

6

(c)(1) or (b)(5), except for the use of the word "commission" in subsection (c)(1). Specifically, Varela argues that based on this difference in wording, subsection (c)(1) should be applied only if firearms are actually used in connection with the commission of another offense, and (b)(5) should be applied if firearms are merely present in connection with another offense.

The government responds that according to the Guidelines, "if a defendant possesses a firearm in connection with the commission of another offense, the [district] court must apply the offense level for the other offense if the resulting offense level is higher than the offense level as calculated under the provision governing the unlawful possession of firearms." Appellee's Br. at 6. We agree.

The determination regarding when to apply subsection (c)(1)(A) does not hinge on a strained interpretation of the word "commission." Rather, the plain language of the Guidelines instructs that when a defendant uses or possesses firearms in connection with the commission or attempted commission of another offense, the district court should apply the cross reference in subsection (c)(1)(A) only if it results in a higher offense level than would result under subsections (a) and (b). See U.S.S.G. § 2K2.1(c)(1)(A) (stating that section 2X1.1 applies "if the resulting offense level is greater than that determined above"). Thus, if a defendant's conduct falls under both subsections (b)(5) and (c)(1), a district court should calculate the offense level twice: once using subsections (a) and (b), and then using the cross reference in subsection (c)(1)(A). Then, the district court

7

should apply whichever resulting offense level is greater.

The resulting offense level using subsections (a) and (b) will depend on the characteristics of the firearm possession, whereas the resulting offense level under subsection (c)(1)(A) will depend on the characteristics of the other substantive offense – in this case, the quantity and quality of methamphetamine. Thus, depending on the facts of a given case, subsections (a) and (b) or subsection (c)(1)(A) could provide the greater offense level and therefore, be used to determine the advisory guidelines sentencing range.

To illustrate when each subsection would apply, we repeat the facts of this case. The PSR first calculated the offense level without the cross reference in subsection (c)(1)(A). Under section 2K2.1(a)(6)(A), Varela had a base offense level of 14. Then, the PSR made the following increases to Varela's offense level: 4 levels under subsection (b)(1) for possessing eleven firearms; 2 levels under subsection (b)(3) for possessing destructive devices; and then 4 levels under subsection (b)(5) for using or possessing firearms in connection with another felony offense. The resulting offense level was 24. Then, the PSR calculated the offense level using the cross reference in subsection (c)(1)(A). Under that cross reference, possession with intent to distribute 150 to 500 grams of "ice" or actual methamphetamine resulted in an offense level of 34. Thus, using only subsections (a) and (b), the resulting offense level was 24, and using subsection (c)(1)(A), the resulting offense level was 34. Consequently, the PSR

8

applied the greater offense level of 34, which was calculated using subsection (c)(1)(A).

Now, take the same scenario but instead suppose that the defendant used or possessed the same firearms in connection with a different substantive offense. For example, suppose that the district court found that the defendant possessed 3.5 grams of actual methamphetamine with the intent to distribute, instead of 166 net grams. In that case, the calculation under subsections (a) and (b) would be unchanged, resulting in an offense level of 24. But, using the cross reference in subsection (c)(1)(A), the offense level for the substantive offense of possessing 3.5 grams of actual methamphetamine with the intent to distribute would result in an offense level of 22. See U.S.S.G. § 2D1.1(c)(9). In that case, subsection (c)(1)(A) would result in a lower offense level than that calculated using subsections (a) and (b). Therefore, by its own terms, subsection (c)(1)(A) would not be applied to calculate the defendant's offense level.

Therefore, the Guidelines clearly explain when to apply subsection (c)(1)(A) and when to apply subsections (a) and (b): the district court should apply whichever subsection leads to the greater offense level. And, as the above-described hypothetical scenario points out, the application of the subsection which results in the greater offense level will not always require the application of subsection (c)(1)(A).

Moreover, we reject Varela's assertion that the language of subsection

9

(c)(1) suggests that it should not be applied when firearms are "merely present" in connection with another offense. To support this argument, Varela relies on the Ninth Circuit's decision in United States v. Myers, 112 F.3d 406 (9th Cir. 1997). In Myers, the Ninth Circuit remanded the case to the district court for an evidentiary hearing to determine whether subsection (b)(5) or subsection (c)(1)(A) should apply. Id. at 411. The Myers court stated:

> The difference in wording in Sections 2K2.1(b)(5) and 2K2.1(c)(1), coupled with guideline commentary and the . . . cases from this circuit, suggest that only subsection (b)(5) be applied when firearms are merely present in connection with another offense, and that subsection (c)(1)(A) also be applied when firearms are actually used in connection with the commission of another offense.

Id.

As discussed above, this approach ignores the plain language of the Guidelines, which directs the utilization of subsection (c)(1)(A) if it results in a higher offense level. Additionally, while Myers may be the rule in the Ninth Circuit, such an approach is inconsistent with our case law. In United States v. Sullivan, 967 F.2d 370 (10th Cir. 1992), we upheld the application of section 2K2.1(c)(1) to a defendant who kept a firearm at his house, where he manufactured drugs. The then-effective version of section 2K2.1(c)(1) stated: "[i]f the defendant used the firearm in committing or attempting another offense, apply . . . § 2X1.1 (Attempt or Conspiracy) if the resulting offense level is higher than that determined above." U.S.S.G. § 2K2.1(c)(1) (1988). The defendant in

10

Sullivan argued that he did not use the firearm in committing or attempting another offense because he "simply kept the weapon at his house," and therefore, subsection (c)(1) did not apply. 967 F.2d at 376. We rejected that argument and recognized that access to a firearm supported the finding that the defendant "used [a] weapon in or during the commission of a crime" under subsection (c)(1). Id. Thus, subsection (c)(1) properly applies to a defendant who had access to a firearm in connection with the commission or attempted commission of another offense. See id.

In the present case, the district court found that "the evidence established, by at least a preponderance, that Defendant possessed methamphetamine with intent to distribute in close proximity of several firearms." ROA, Vol. I, at 317. Therefore, under Sullivan, Varela's access to firearms during drug transactions puts him squarely within the language of subsection (c)(1)(A).[4]

### III

Accordingly, we hold that the district court did not err in the calculation of Varela's sentence, and the judgment of the district court is AFFIRMED.

---

[4] Moreover, this conclusion is consistent with our unpublished opinion in United States v. Valdez, 248 F. App'x 47 (10th Cir. 2007). In Valdez, the defendant argued that "the difference in wording between the two subsections . . . suggests that (b)(5) may apply when firearms are merely present during the drug trafficking, while (c)(1) may apply only when the firearms are actually used in connection with the commission of the other offense." Id. at 51. Relying on the language of subsections (b)(5) and (c)(1)(A) and our precedent of Sullivan, we rejected that argument and the approach of the Ninth Circuit in Myers. See id. at 51–52.

11